Frankie **ODOMES**, Plaintiff-Appellee,
Cross-Appellant,

v.

**NUCARE, INC.,** Defendant-Appellant,
Cross-Appellee.

Nos. 79–1423, 79–1443.

United States Court of Appeals,
Sixth Circuit.

Submitted March 31, 1981.

Decided June 24, 1981.

Rehearing and Rehearing En Banc
Denied August 25, 1981.

Thomas A. Stroud, Goff, Sims, Cloud, Stroud & Shepherd, Memphis, Tenn., for defendant-appellant, cross-appellee.

William D. Wilson, Jr., Memphis, Tenn., for plaintiff-appellee, cross-appellant.

Before LIVELY and KEITH, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

This employment discrimination action was filed by Mrs. Frankie Odomes, a black nurse's aide, against her employer, Nucare, Inc., operator of a Memphis, Tennessee, nursing home known as Whitehaven Care Center, Inc. Mrs. Odomes was discharged by the Whitehaven Care Center in 1976. She filed a charge of race and sex discrimination with the E.E.O.C. which found that there was reasonable cause to believe that she had been discriminated against and notified her of her right to sue. She subsequently commenced this action in the district court.

The district court found that Mrs. Odomes was not discharged because of her race or sex but, rather, was discharged due to a reduction in the number of nurse's aides required on the shift to which she was assigned. The district court also found that during her employment Nucare discriminated against Mrs. Odomes by paying her less for performing substantially the same work as more highly paid male orderlies, a violation of Title VII of the Civil Rights Act of 1964[1] and the Equal Pay Act of 1963.[2]

1. 42 U.S.C. § 2000e–2(a)(1) provides in pertinent part: "It shall be an unlawful employment practice for an employer—... to discriminate against any individual with respect to his compensation ..., because of such individual's race [or] ... sex ..."

2. 29 U.S.C. § 206 provides:

(d)(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he

Judgment was rendered against Nucare for $1,963.55 in damages, $12.90 for expenses and $1,963.55 in attorney's fees. To compute damages the district court used the longer time period provided by 42 U.S.C. § 2000e–5(g). Both sides appeal.

As cross-appellant Mrs. Odomes contends that she was discriminated against in violation of 42 U.S.C. § 2000e–3.[3] She argues that, after her discharge, she was not called back to work in retaliation for having filed a charge with the E.E.O.C. The district court rejected this contention. For the reasons stated in Part IV of this opinion, we reverse the judgment of the district court as to this aspect of the case and remand for further proceedings. In all other respects we affirm the judgment.

## I

The Whitehaven Care Center employed a staff of female nurse's aides and male orderlies. The district court found that the work of the nurse's aides and orderlies consisted primarily of patient care, and included bathing patients, distributing food trays, feeding, taking temperatures and changing clothes and bed linens. The orderlies bathed only the less numerous male patients and the nurse's aides bathed the more numerous female patients. Orderlies, when present and not caring for their assigned patients, were expected to perform other tasks such as unloading supplies and oxygen tanks, filling a milk dispenser, moving furniture and handling luggage. Nurse's aides performed these tasks when no orderly was available.

Mrs. Odomes was employed on the 3 p.m. to 11 p.m. shift. Three of the orderlies who also were employed on this shift testified on behalf of Mrs. Odomes. The only orderlies who testified as witnesses on behalf of Nucare were characterized by the district court as "management related." They were the sons of the President, Medical Director and Secretary-Treasurer of Nucare.

The management related orderlies were students while they worked for the nursing home. During the summer they worked a special 9 a.m. to 5 p.m. shift and during the school year they worked week-ends and the Christmas holidays on the 7 a.m. to 3 p.m. shift. The management related orderlies were paid more than the other orderlies. They testified that they spent two or three hours each day doing maintenance work such as cleaning air conditioning filters, yard work and carrying away trash. Otherwise, the duties of the management related orderlies resembled those of the other orderlies.

## II

Nucare contends that the work of its nurse's aides and orderlies was not substantially equal within the meaning of the Equal Pay Act or Title VII. In the alternative, Nucare contends that one of the exemptions enunciated in the Equal Pay Act is applicable. We conclude that the findings of fact of the district court in support of its resolution of these issues were not clearly erroneous. Fed.R.Civ.P. 52(a).

In *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974), the Supreme Court wrote:

Congress' purpose in enacting the Equal Pay Act was to remedy what was perceived to be a serious and endemic problem of employment discrimination in private industry—the fact that the wage structure of "many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same." S.Rep.No. 176, 88th Cong., 1st Sess., 1 (1963). The solution adopted was quite simple in principle: to require

pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, . . .

3. 42 U.S.C. § 2000e–3(a) provides in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge . . . under this subchapter."

that "equal work will be rewarded by equal wages." *Ibid.*

In addition to depressing the wages of women, certain other social and economic consequences result from this kind of discrimination. *See Shultz v. Wheaton Glass Company*, 421 F.2d 259, 265, and n. 11 (3rd Cir.), *cert. denied*, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970).

■ The analysis of a claim of unequal pay for equal work is essentially the same under both the Equal Pay Act and Title VII. *Strecker v. Grand Forks Cty. Soc. Serv. Bd.*, 640 F.2d 96, 99 (8th Cir. 1980). *But see Gunther v. County of Washington*, 623 F.2d 1303, 1309 (9th Cir. 1979), aff'd —— U.S. ——, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). The standard of review applicable to such a claim of unequal pay for equal work is the clearly erroneous rule of Fed.R. Civ.P., 52(a). *Brennan v. Owensboro-Daviess Cty. Hosp., etc.*, 523 F.2d 1013, 1015 (6th Cir. 1975), *cert. denied*, 425 U.S. 973, 96 S.Ct. 2170, 48 L.Ed.2d 796 (1976).

■ To establish a claim of unequal pay for equal work a plaintiff has the burden to prove that the employer "pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which require equal skill, effort and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan, supra*, 417 U.S. at 195, 94 S.Ct. at 2228. Congress did not intend through use of the phrase "equal work" to require that the jobs be identical. *Shultz v. Wheaton Glass Company, supra*, 421 F.2d at 265. Instead, to effectuate the remedial purposes of the Equal Pay Act, only substantial equality of skill, effort, re-

sponsibility and working conditions is required. *Id.* at 265. Whether the work of nurse's aides and orderlies is substantially equal must be determined on a case-by-case basis, *Brennan v. South Davis Community Hospital*, 538 F.2d 859, 861 (10th Cir. 1976). This issue must be resolved by an overall comparison of the work, not its individual segments. *Gunther v. County of Washington, supra*, 623 F.2d at 1309.

Nucare contends that the primary and only duty of the nurse's aides was patient care, although it is conceded that patient care also was the primary duty of the orderlies. Nucare argues that patient care was not the only duty of orderlies. Nucare asserts that orderlies performed "heavy lifting chores" and that at least one orderly provided security to an otherwise all female night shift.

In *Usery v. Columbia University*, 568 F.2d 953, 960 (2nd Cir. 1977), the Second Circuit observed that in cases in which the central fact is the sharing of common responsibilities by male and female workers:

> The most frequently litigated question is whether additional lifting, fetching, hauling or other tasks performed by men require an amount of additional effort sufficient to foreclose a holding of substantial equality under the Act. For the most part the cases have concluded that the additional duties are either too insubstantial in amount or too inconsistently assigned to measure up to the Act's standard of substantial equality.

The uncontradicted testimony of the orderlies who testified for Mrs. Odomes was that they did little or nothing that the nurse's aides did not do.[4]

---

4. The testimony of Orderly Jerry Pavatt:
   Q [W]ere you familiar with the duties of the aides, the female aides?
   A They were to care for the female patients. Generally the same duties as mine.
   Q Were there differences between their duties and your duties?
   A No, sir.
   The testimony of Orderly Larry Stewart:
   Q Did you work along side some female aides?
   A Yes, sir, I did.

   Q Did you do anything in your work that they did not do in their work?
   A No, we all done the same thing.
   The testimony of Orderly Dennis Mitchell:
   Q You took the garbage out from the kitchen?
   A Yes, sir.
   Q Sometimes there was some trouble with some commodes?
   A When they stopped up.
   Q Would the aides also unstop commodes or pour the fluid down them?
   A Not to my recollection.

Nucare states in its brief that the duty of providing security to the otherwise all female night shift, "involved simply . . . [the orderly's] presence together with periodically checking the premises."

Referring to the heavy lifting chores, Nucare states in its brief "this is not to say that in combinations of two, three or more nurse's aides are not able to do lifting; it is just to say that orderlies, when present, are expected to do the lifting or help a nurse's aide when she requests aid in lifting." Orderly Pavett testified that when he made periodic checks of the premises, he did so with one or more nurse's aides.

The facts of the present case are strikingly similar to those of *Brennan v. Owensboro-Daviess Cty. Hosp., etc., supra*, 523 F.2d 1013, in which Circuit Judge Wade H. McCree, Jr. writing for this court, observed:

> The evidence, however, indicates that, as a rule, aides and orderlies helped each other to lift heavy patients. Dorothy Crump, an aide, testified that although an orderly usually assisted a patient in getting on his crutches and *helped* to weigh heavy patients, she would sometimes summon an aide and sometimes an orderly to · *assist her* in lifting a heavy patient. Elizabeth Wilhite, an aide, testified that she needed help almost daily in lifting heavy patients and that she would call either an orderly or an aide to *assist her.* Josephine Hatfield, an aide, testified that orderlies usually *helped her* to lift heavy patients but that if an orderly were not available, she would obtain assistance from another aide. Although orderlies single-handedly lifted heavy patients, particularly when bathing male patients, aides also lifted female patients single-handedly except when they were either extremely heavy or uncooperative.

> Q Was that part of your job, did someone tell you that was what you had to do?
> A No, I just took it on my own.
> Q What about taking out the garbage, did someone tell you that you had to do that?
> A No, sir.
> Q You just did it on your own?
> A Yes.
> Q What about the milk?

We hold, therefore, that the finding of the district court that orderlies but not aides lifted heavy patients is clearly erroneous. *Id.* at 1020.

■ Once a plaintiff has established that he or she has been paid unequally for equal work, "the burden shifts to the employer to show that the differential is justified under one of the Act's four exemptions." *Corning Glass Works v. Brennan, supra*, 417 U.S. at 196, 94 S.Ct. at 2229. This is a heavy burden. *Equal Emp. Opportunity Com'n. v. Whitin Machine Works, Inc.*, 635 F.2d 1095, 1098 (4th Cir. 1980), citing *Brennan v. Owensboro-Daviess County Hospital, supra*, 523 F.2d 1013, 1030–31. The four exemptions enunciated by the Equal Pay Act are applicable to Title VII claims of unequal pay for equal work. 42 U.S.C. § 2000e–2(b).

One of the four exemptions enunciated by the Equal Pay Act is a general catchall provision which exempts from the Act's coverage any differential based on any factor other than sex. 29 U.S.C. § 206(d)(1)(iv). As an alternative, Nucare argues that it satisfies the terms of the general catchall provision in that two of its orderlies, both of whom testified for Mrs. Odomes, were in training.

■ The Secretary of Labor recognizes "bona fide training programs" as one factor other than sex which does not offend the equal work equal pay command of the Equal Pay Act. 29 C.F.R. § 800.148 (1980). The Secretary has noted, however: "Training programs which appear to be available only to employees of one sex will . . . be carefully examined to determine whether such programs are, in fact, bona fide." *Id.* The Fifth Circuit has written: "Male dominated training programs . . . have failed to pass appellate tests with increasing fre-

> A I usually did it on Wednesdays.
> Q Did you do that on your own, too?
> A Uh-huh. On my shift there is not too much to do from three to eleven.
> Q When you were hired were you hired to tend to the patients?
> A Yes, sir.
> Q Was that the job you applied for?
> A Yes, sir.

quency." *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1047 (5th Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973). We conclude that Nucare's training program, unlike the training program in *Hodgson,* was an "illusory," "post-event justification" for unequal pay for equal work. *Id.* at 1047.

Therefore, the judgment of the district court on this issue is affirmed.

### III

Nucare further contends that Mrs. Odomes' claim of sex discrimination was barred by a settlement agreement. An agreement was negotiated between the attorney who filed the original complaint for Mrs. Odomes and the attorney for Nucare whereby Mrs. Odomes was to receive $750 in full satisfaction of her claims. A proposed consent order dismissing the case with prejudice was signed by both attorneys. A check payable to Mrs. Odomes and her attorney was mailed to him. Mrs. Odomes, who previously had indicated a willingness to accept the settlement, notified her attorney that she no longer was willing to compromise the case on the proposed basis. Nucare was so informed. The $750 check was never accepted by Mrs. Odomes and no consent order was entered by the district court.

Mrs. Odomes employed another attorney who represented her in all subsequent proceedings, including opposition to the motion for summary judgment filed by Nucare on the ground that the parties had agreed to settle the case. The District Judge denied the motion. Commenting from the bench, the District Judge held that the agreement "was not finalized." He noted that in employment discrimination cases the courts have treated plaintiffs as "sort of wards of the court."

■ Generally, settlement agreements will be enforced. *The Aro Corporation v. Allied Witan Company,* 531 F.2d 1368, 1371 (6th Cir.), *cert. denied,* 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976). In *Kukla v. National Distillers Products,* 483 F.2d 619, 621 (6th Cir. 1973), this court commented

that a settlement agreement may be enforced even where the agreement has not been arrived at in the presence of the court nor reduced to writing.

■ Under the facts of this case we cannot hold that the district court abused its discretion by refusing to enforce the alleged settlement agreement. Mrs. Odomes played the role of a private attorney general by vindicating the "important congressional policy against discriminatory employment practices." *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 45, 94 S.Ct. 1011, 1018, 39 L.Ed.2d 147 (1973). She should be accorded no less protection than plaintiffs under comparable legislation. See, for example, 15 U.S.C. § 1635, which provides that a consumer may rescind the transaction until midnight of the business day following the consummation of the transaction. As the Supreme Court noted in *Alexander v. Gardner-Denver, id.* at 45, 94 S.Ct. at 1018:

> Congress gave private individuals a significant role in the enforcement process of Title VII. Individual grievants usually initiate the Commission's investigatory and conciliatory procedures. And although the 1972 amendment to Title VII empowers the Commission to bring its own actions, the private right of action remains an essential means of obtaining judicial enforcement of Title VII.

The reluctance of the courts to close their doors to litigants in discrimination cases is illustrated by the reasoning of the Supreme Court in *Alexander v. Gardner-Denver Co., supra,* 415 U.S. 36. In that case the Court held: "Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective bargaining agreement." *Id.* at 49, 94 S.Ct. at 1020. See also the decision of this court in *Lyght v. Ford Motor Company,* 643 F.2d 435 (6th Cir. 1981), holding that an action by an employee under Title VII of the Civil Rights Act of 1964 charging racial discrimination was not barred by an earlier

settlement effected by the Michigan Civil Rights Commission. This court held: "It is settled law that the doctrines of res judicata, collateral estoppel and election of remedies do not apply in Title VII actions." *Id.* at 441. We also held "waiver of such a federal remedial right is not lightly to be inferred." *Id.,* 440.

In *Alexander v. Gardner-Denver Co., supra,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147, the Court commented "presumably an employee may waive his cause of action under Title VII as part of a voluntary settlement." *Id.,* at 52, 94 S.Ct. at 1021. In a footnote to this language the Court said: "In determining the effectiveness of any such waiver, a court would have to determine at the outset that the employee's consent to the settlement was voluntary and knowing." *Id.,* at 52, n. 15, 94 S.Ct. at 1021 n. 15. In *Lyght v. Ford Motor Company, supra,* this court emphasized that there was no voluntary settlement, "formalized by consent decrees, written releases or signed settlement agreements specifically waiving the right to future litigation." *Id.,* at 441. The record in the present case establishes to our satisfaction that Mrs. Odomes did not knowingly and voluntarily agree to settle her claims against Nucare. The District Court did not abuse its discretion by overruling Nucare's motion for summary judgment.

All other contentions of Nucare have been considered and found to be without merit.

### IV

As a cross-appellant, Mrs. Odomes contends Nucare violated 42 U.S.C. § 2000e–3 (see n. 3) by retaliating against her because she filed a charge with the E.E.O.C. The district court found to the contrary. We hold this finding to be clearly erroneous. *See Brennan v. Owensboro-Daviess County Hospital, supra,* 523 F.2d 1013, 1015.

During the trial the District Judge examined the President of Whitehaven Care Center, Inc. The relevant part of this examination is as follows:

Q. [D]id you have a conversation to the effect that she would be called back?
A. Yes, sir.
Q. Why wasn't she called back?
A. Because I heard later that she had filed this suit, or gone to the EEOC, and I felt if I was going to be sued I wouldn't want to call her back. I will just be frank about it.

Upon remand we direct the district court to exercise to the extent it determines necessary the broad equitable powers granted to it by 42 U.S.C. § 2000e–5(g) and thereby to place Mrs. Odomes "as near as may be, in the situation [s]he would have occupied if the wrong had not been committed." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418–19, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). *See also Teamsters v. United States,* 431 U.S. 324, 364, 97 S.Ct. 1843, 1869, 52 L.Ed.2d 396 (1977); *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 763, 96 S.Ct. 1251, 1263, 47 L.Ed.2d 444 (1976).

The judgment of the district court is affirmed in part and reversed in part. The costs of this appeal are taxed against Nucare, Inc.