Sharon A. HENRY, Plaintiff-Appellant, Cross-Appellee,

v.

LENNOX INDUSTRIES, INC., Defendant-Appellee, Cross-Appellant.

Nos. 84–3523, 84–3577.

United States Court of Appeals, Sixth Circuit.

Argued June 10, 1985.

Decided July 29, 1985.

Robert M. Sanders, argued, Reynoldsburg, Ohio, for plaintiff-appellant, cross-appellee.

Robert F. Weaver, Jr., Vorys, Sater, Seymour & Pease, Jonathan R. Vaughn, argued, Columbus, Ohio, for defendant-appellee, cross-appellant.

Before CONTIE and WELLFORD, Circuit Judges; and EDWARDS, Senior Circuit Judge.

CONTIE, Circuit Judge.

Sharon Henry and her former employer, Lennox Industries, Inc., appeal and cross-appeal from the district court judgment in Henry's action alleging unequal pay, sex discrimination and constructive discharge pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Lennox challenges the district court's conclusions that Henry was constructively discharged and discriminated against on account of her sex. Henry contends that the district court erred in finding that the differences in pay between her and other similarly situated male employees resulted from factors other than sex. Henry also challenges the district court's calculation of backpay and the court's denial of reinstatement. For the reasons that follow, we remand the case to the district court for further proceedings consistent with this opinion.

## I.

On August 11, 1981, Sharon Henry filed this Title VII action alleging that on September 8, 1980 she was denied the position of International Order Correspondent on account of her sex although she had been performing the duties of that position for three and a half years. She alleged that Jim Nye, who had held a similar position, was paid more than she was, and that Bill Thompson, who was promoted to the position on September 8, 1980 was at a pay grade five levels higher than plaintiff although he had no prior experience in the international department in contrast to plaintiff who had seven years experience. Henry also alleged that Lennox maintained a continuing policy of sex discrimination, and alleged that on September 26, 1980, she was constructively discharged for attempting to assert her constitutional rights. In this action, Henry sought to enjoin Lennox's discriminatory activities, $40,000 in compensatory damages, reinstatement at a salary comparable to Thompson's, costs and attorney fees.

At trial on January 9, 1984, Henry testified that she began work for Lennox in Columbus, Ohio in November 1973 as secretary for vice-president Coit Litton and International Order Correspondent Jim Nye. In 1975 after Litton retired, Henry worked entirely for Nye processing purchase orders. In June 1977, Nye was transferred to Marshalltown, Iowa. Before Nye left, John Opatich, distribution manager, told Henry "we want you to now pick up the duties of having the international shipments go out of Columbus." Henry did some of the work Nye had done and a clerk, Diane Cusick was assigned to do the clerical work Henry had previously done. Henry marshalled equipment, ordered containers, made shipments, and supervised her clerk.

In March 1980, Cusick was transferred and Henry had to do both jobs. In August 1980, Larry Beidelman conducted a study of international department efficiency and told Henry, according to her, that the duties she was performing were labor grade 9, although she was only labor grade 4. All of Henry's performance reviews were good and she received no complaints or disciplinary notices. Beidelman suggested hiring a clerk typist to help Henry.

Henry testified that Manager Chuck Davis told her that the company was bringing in Bill Thompson and that Henry would have to do the clerical duties. Henry was to train Thompson who would then be her supervisor. Thompson was a former forklift operator in the plant. Henry resigned effective September 30, 1980 at a time when she was earning $1,000 per month and Thompson was earning $1,800. Thompson had no experience in the international department. Henry testified:

> I felt that by them bringing Bill Thompson into my office for me to train was like another slap in the face, and I felt it was a great injustice to me, and I felt ... that they were telling me that they really didn't value my work that much, there was no place for me to go if they were doing this, there was no place to go, if I was just going to go back to the clerical, and I could not work under those circumstances.

Henry testified that before she resigned Davis offered a $25 per month raise. Henry requested a $100 per month raise to continue with the company as a showing of good faith, but decided to resign when the raise was refused. At the time of trial, Henry was employed by Burlington Northern Air Freight at a salary of $16,000. She began that job in March 1980 at an annual salary of $10,500.

John Opatich, supervisor of the distribution department, testified that Henry was a good, qualified, competent employee. Lawrence Beidelman, who investigated the international department, testified that the study was commissioned because the international department was missing shipping dates. Biedelman said that his report was not derogatory of Henry and did not recommend that she be replaced by Thompson.

Ronald Armstrong, employee relations manager, testified that Opatich absorbed supervision over the international department after Nye left, but was demoted in September 1980 when Thompson was promoted. Armstrong testified that Thompson started at labor grade 9 and that he had transferred from the factory where he was working after being transferred from salaried personnel in May 1980. Armstrong testified that Lennox has a policy of trying to restore salaried personnel who had been involuntarily assigned to the factory.

James Nye testified that Henry was a good, competent and effective worker and that he had no part in the selection of Thompson. Nye testified that there were no weaknesses in Henry's performance and that he had no doubt that Henry could competently perform the duties she had taken over from Nye and which were assigned to Thompson.

William Thompson testified that in August 1980, Charles Davis told him that he wanted Thompson to take over Henry's duties. Thompson, employed by Lennox

for 17 years, agreed to accept the position only if he received a raise of $100. Thompson was told that he would supervise Henry, but that she had to train him. Thompson testified that the work "was different ... than anything I had ever done." When Henry left, Cusick replaced her. Thompson testified that he had previously worked for five years in the domestic department and had been commended by corporate headquarters on the amount of money he had saved them on freight costs.

Charles Davis, plant manager, testified that Thompson was hired due to his knowledge of how the product fit into the container, and that he was hired to do Nye's prior duties, to supervise Henry, and to do Opatich's job. Davis testified that Henry was offered a raise of $75 a month. When asked if Henry was considered for the position to which Thompson was appointed, Davis answered:

> I would say there was not a lot of consideration given there, but the people that had performed in that area were certainly looked at before the conclusion was reached that due to capabilities and experience and that sort of thing, that Mr. Thompson was the one that would be brought into the area.

On June 11, 1984, the district court entered judgment in favor of Henry for $5,000 plus interest in backpay but denied reinstatement. The court found that the promotion of Thompson and demotion of Henry was motivated by discriminatory animus but that the differential in pay among Nye, Thompson, and plaintiff was justified by legitimate non-discriminatory business reasons.[1]

## II.

Preliminarily, we note that we review the district court's findings of fact for clear error. *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 374 (6th Cir.1984); *Geisler v. Folsom*, 735 F.2d 991, 995 (6th Cir.

---

1. Appellant Henry also contends that Lennox's cross-appeal was untimely filed. Pursuant to Fed.R.App.Pro. 4(a)(3), Lennox had fourteen days after Henry filed her notice of appeal to file notice of appeal. Henry filed on July 3 and Lennox on July 16. This assignment of error is frivolous.

1984); *Sones-Morgan v. Hertz Corp.*, 725 F.2d 1070, 1071 (6th Cir.1984); *Fields v. Bolger*, 723 F.2d 1216, 1219 (6th Cir.1984). There are no distinctions between ultimate and subsidiary findings of fact, the predominant issue of intent in Title VII cases is factual, and the deferential standard of Fed.R.Civ.Pro. 52 does not apply to questions of law. *Pullman-Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). In *Anderson v. City of Bessemer City*, —— U.S. ——, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), the Court reiterated that a reviewing court may only overturn the district court's findings when the court "is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). "The reviewing court oversteps the bounds of its duty under Rule 52 if it undertakes to duplicate the role of the lower court." *Anderson*, 105 S.Ct. at 1511.

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

*Id.* at 1512. Further, "[w]hen findings are based on determinations regarding the credibility of witnesses, Rule 52 demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Id.*

#### A.

A plaintiff alleging one instance of discrimination establishes a prima facie case justifying an inference of individual racial discrimination by showing that he (1) belongs to a racial minority, (2) applied and was qualified for a vacant position the employer was attempting to fill, (3) was rejected for the position, and (4) after his rejection, the position remained open and the employer continued to seek applicants of the plaintiff's qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Once these facts are established, the employer must produce "evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). At that point, the presumption of discrimination "drops from the case," *id.*, at 255, n. 10, 101 S.Ct., at 1095, n. 10, and the District Court is in a position to decide the ultimate question in such a suit: whether the particular employment decision at issue was made on the basis of race. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S., at 253, 101 S.Ct., at 1093. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff regarding the particular employment decision "remains at all times with the plaintiff," *ibid.*, and in the final analysis the trier of fact "must decide which party's explanation of the employer's motivation it believes." *United States Postal Service Board of Governors v. Aikens*, 460 U.S., at 716, 103 S.Ct., at 1482.

*Cooper v. Federal Reserve Bank of Richmond*, —— U.S. ——, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984).[2] In establishing pretext, the plaintiff "may succeed ... either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. It is clear

---

**2.** It is clear that the defendant's burden is one of production and articulation, not persuasion.

*Ford v. Nicks*, 741 F.2d 858, 863 (6th Cir.1984).

that the plaintiff need not introduce new evidence regarding pretext. "[T]here may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." *Id.* at 255 n. 10, 101 S.Ct. at 1095 n. 10. Further, "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant." *Aikens*, 103 S.Ct. at 1482. Accordingly, the district court properly considered only the issue of pretext or, rather, whether the employer's decision was motivated by the discriminatory animus suggested by the *prima facie* case or the other reasons suggested by defendant.

Applying the *McDonnell-Douglas/Burdine* tests the district court concluded that Henry met her *prima facie* case, a conclusion that Lennox does not challenge. The court further found that Lennox met the burden of producing legitimate nondiscriminatory reasons for its actions—that Thompson was most qualified and that the International Department had been experiencing efficiency problems. However, the court found that the demotion resulted from discriminatory intent because "[t]he Court has difficulty believing that defendant's articulated reasons are those which actually motivated the employment decision at issue." The court based this credibility determination on the fact that there was no evidence connecting the department's problems to plaintiff, Henry's good job evaluations, and the testimony of James Nye. The court also inferred pretext from the fact that Lennox had a male salaried employee working in the plant and that the company had a policy of attempting to relocate such displaced employees. The court also considered the facts that plaintiff had more experience in the International Department than Thompson and that Charles Davis testified that plaintiff was not even seriously considered for the position.

■ While we recognize that the desire to hire a more qualified applicant is the basis for a legitimate business decision especially when management is involved, *Parker v. Board of School Commissioners*, 729 F.2d 524, 527 (7th Cir.1984), and that the fact that the court finds that the employer misjudged the qualifications of its applicants does not expose such employer to Title VII liability, *Nellis v. Brown County*, 722 F.2d 853, 860–61 (7th Cir. 1983), neither maxim dictates that the district court's conclusions in this case meet the high standard for clear error enunciated in *Anderson*. As we have noted previously, "the legitimacy of the articulated reason for the employment decision is subject to particularly close scrutiny where the evaluation is subjective and the evaluators themselves are not members of the protected minority." *Grano v. Department of Development of City of Columbus*, 699 F.2d 836, 837 (6th Cir.1983). The district court plausibly found that Henry had the experience and qualifications to do the job in contrast to Thompson's qualifications. Likewise, there was no link between Henry and the problems of the International Department. Therefore, the district court's finding that discriminatory animus motivated the decision in question is not clear error.

**B.**

Defendant contends that the trial court erred in finding that the circumstances surrounding Henry's demotion and resignation constituted a constructive discharge. The court based its finding on the fact that not only was Thompson promoted ahead of Henry, but that Henry was demoted to her clerk position which she had abandoned when Nye left for Iowa in 1977. The court also considered the facts that Henry was required to train the person who would supervise her, that no explanation was given for her "demotion," and that she was never seriously considered for the position. Accordingly, the court concluded that a person in Henry's shoes would have felt compelled to resign.

■ The issue of constructive discharge depends on the facts of each case

and "requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct on the employee." *Held v. Gulf Oil Company*, 684 F.2d 427, 432 (6th Cir.1982). A constructive discharge exists if working conditions are such that a reasonable person would feel compelled to resign. *Id.*;[3] *Easter v. Jeep Corp.*, 750 F.2d 520, 522–23 (6th Cir.1984). In *Easter*, the court found that "although Easter's immediate supervisor awarded her a merit increase in salary, Easter was informed that she was incapable of performing supervisory work and was denied a promotion." *Id.* at 523. The courts have emphasized that "[p]roof of discrimination alone is not a sufficient predicate for a finding of constructive discharge; there must be other 'aggravating factors.'" *Geisler*, 735 F.2d at 996.

■ The district court opinion in this case clearly sets out the grounds supporting a finding of constructive discharge in this case. App. at 18. While the facts here are not as egregious as in *Held* and *Easter*, nevertheless, we cannot say that the evidence does not support a finding of constructive discharge. Accordingly, there is no clear error.

## III.

Plaintiff alleged that Nye and Thompson received greater pay than she did while performing substantially similar work. The district court held that with respect to Nye, plaintiff failed to establish a *prima facie* case because the two were not similarly situated. With respect to Thompson, the court found that even if a *prima facie* case was established, plaintiff could not meet her ultimate burden of persuasion since Thompson's higher salary was a function of his seniority rather than the position to which he was promoted. It is clear that even if Henry rather than Thompson had been promoted, Henry would not have received the same salary as did Thompson.

■ A claim of unequal pay for equal work is essentially the same whether pursued under Title VII or the Equal Pay Act. *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir.1981). The plaintiff must show that different wages were paid to employees of opposite sexes for substantially equal work. *Id.* However, "claims for sex-based wage discrimination can be brought under Title VII even though no member of the opposite sex holds an equal but higher paying job." *County of Washington v. Gunther*, 452 U.S. 161, 168, 101 S.Ct. 2242, 2247, 68 L.Ed.2d 751 (1981). *See Spaulding v. University of Washington*, 740 F.2d 686, 700–01 (9th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984).

■ The district court did not clearly err in concluding that Henry failed to carry her ultimate burden of persuasion in light of the independent reasons for the salary differentials.

## IV.

### A.

Although Henry currently holds a position at a higher wage than her position at Lennox, she continues to seek reinstatement. The district court held only that "the Court does not believe that reinstatement, under the particular facts of this case, is an appropriate remedy."

■ While the statute, 42 U.S.C. § 2000e–5(g), clearly provides for reinstatement, the scope of the remedy rests within the discretion of the district court. *Grubb v. W.A. Foote Memorial Hospital, Inc.*, 533 F.Supp. 671, 676 (E.D.Mich.1981), *aff'd*, 759 F.2d 546 (6th Cir.1985). A finding of intentional discrimination presumptively entitles the plaintiff to reinstatement. *Id.*; *Darnell v. City of Jasper*, 730 F.2d 653, 655 (11th Cir.1984); *McCormick v. Attala County Board of Education*, 541 F.2d

---

3. The employee's perception of his situation is judged objectively. "An employee may not be unreasonably sensitive to his working environment. A constructive discharge arises only when a reasonable person would find conditions intolerable." *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981).

1094, 1095 (5th Cir.1976); *Gates v. ITT Continental Baking Co.,* 581 F.Supp. 204, 208 n. 4 (N.D.Ohio 1984). "[R]einstatement, like backpay, should be denied 'only for reasons which, if applied generally, would not frustrate the central statutory purpose of eradicating discrimination....'" *Grubb,* 541 F.Supp. at 676 (quoting *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975)). Reinstatement has been found inappropriate where the plaintiff has found other work or could have, *Brito v. Zia Company,* 478 F.2d 1200, 1204 (10th Cir.1973), where reinstatement would require displacement of a non-culpable employee or where hostility would result, *Shore v. Federal Express Corp.,* 589 F.Supp. 662, 668 (W.D.Tenn.1984); *EEOC v. Pacific Press Publishing Co.,* 482 F.Supp. 1291, 1320 (N.D.Cal.1979), *aff'd,* 676 F.2d 1272 (9th Cir.1982). In cases where the district court has declined to award reinstatement, the court has awarded front pay in lieu of reinstatement. *See Fadhl v. City and County of San Francisco,* 741 F.2d 1163, 1167 (9th Cir.1984); *Shore,* 589 F.Supp. at 668; *Pacific Press Publishing Co.,* 482 F.Supp. at 1320.

■ The basis of the district court's refusal to grant reinstatement in this case is unclear as the court provided no rationale. Hostility of the employer or other employees is contradicted by the record. While we review the district court's decision for an abuse of discretion, such a review is precluded by the court's failure to articulate the reasons for so exercising its discretion. Accordingly, we remand the issue of reinstatement to the district court to consider the appropriateness of reinstatement.

### B.

■ The district court awarded $5,000 in backpay for the five months plaintiff was unemployed (October 1980—February 1981), but terminated backpay as of the day plaintiff commenced employment with Burlington Northern. When plaintiff was discharged from Lennox her salary was $1,000/month and when she was hired by Burlington it was $875/month. By the date of trial in January 1984, Henry was earning about $1,333/month. Plaintiff is correct that she is entitled to the differential between what she earned when discharged and what she made in her new employment. *Shore,* 589 F.Supp. at 667–68; *Hunter v. Westinghouse Electric Corp.,* 576 F.Supp. 704, 728 (S.D.Ohio 1983); *Easter v. Jeep Corp.,* 538 F.Supp. 515, 522 (N.D.Ohio 1982), *aff'd,* 750 F.2d 520 (6th Cir.1984). However, the court found that plaintiff failed to introduce evidence regarding the date her salary reached the level of her salary at the date of discharge, and, accordingly, refused to grant backpay other than for the months in which Henry was unemployed. While plaintiff has the burden of proving that she is entitled to · backpay, *Horn v. Duke Homes, Div. of Windsor Mobile Homes,* 755 F.2d 599, 606 (7th Cir.1985), "[a]ny ambiguity in what the claimant would have received but for discrimination should be resolved against the discriminating employer," *Rasimas v. Michigan Department of Mental Health,* 714 F.2d 614, 628 (6th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984). Normally, the amount of backpay is computed until final judgment. *EEOC v. Monarch Machine Tool Company,* 737 F.2d 1444, 1453 (6th Cir.1980). Because plaintiff is indeed entitled to further backpay and because the amount of such should be easily ascertainable, we remand the case to the district court for calculation of backpay.

Accordingly, the judgment of the district court is AFFIRMED with respect to the appeal in Case No. 84–3523 and AFFIRMED in part and REMANDED in part with respect to the appeal in Case No. 84–3577. The costs of appeal are taxed to Lennox.