875 F.2d 863
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,
v.
The CITY COUNCIL OF the CITY OF CLEVELAND, Defendant-Appellee.
 No. 88-3726.
 United States Court of Appeals, Sixth Circuit.
 May 24, 1989.
 
 N.D.Ohio
 AFFIRMED.
 On Appeal from the United States District Court for the Northern District of Ohio.
 Before MILBURN and DAVID A. NELSON, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The Equal Employment Opportunity Commission ("EEOC") appeals the summary judgment of the district court in favor of defendant-appellee The City Council of the City of Cleveland ("defendant" or "the City") in this action filed pursuant to the Fair Labor Standards Act of 1938, as amended by section 6(d)(1) of the Equal Pay Act of 1963, 29 U.S.C. Sec. 206(d)(1) (1978). For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 The EEOC commenced the present action on September 30, 1986, by filing a complaint under section 6(d)(1) of the Equal Pay Act of 1963 ("the Act"), 29 U.S.C. Sec. 206(d)(1), alleging that defendant maintains a wage differential between the salaries it pays to male and female clerks performing substantially equal work and that such differential is based upon sex.[1] After discovery, defendant moved for summary judgment. On June 10, 1988, the district court granted defendant's motion, finding (1) that the EEOC had failed to make out a prima facie case of unequal pay under the Act, and (2) that even assuming a prima facie case had been established, that the defendant had established affirmative defenses by showing any disparities in salaries between male and female employees were due to seniority, the defendant's civil service system, and the male comparator's special usefulness. The EEOC timely appealed.
 
 B.
 
 3
 As the district court in the present case granted summary judgment under Rule 56 of the Federal Rules of Civil Procedure, we are required in our review of the facts to draw all inferences in favor of the party opposing the summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 174, 106 S.Ct. 1348, 1356 (1986); SEC v. Blavin, 760 F.2d 706, 710 (6th Cir.1985). On summary judgment, "[t]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2511 (1986). The Supreme Court stated in Anderson that "all justifiable inferences are to be drawn in [the nonmovant's] favor." Id. at ----, 106 S.Ct. 2513.
 
 
 4
 The City of Cleveland employs "station clerks" at its water purification plants to perform clerical and monitoring functions. These plants are administered by the City's Division of Water and Heat, a subdivision of the Department of Public Utilities. The Division of Water and Heat provides water service to the City and surrounding communities. The water purification process consists of two stations for each plant, a filtration station and a pumping station. Prior to 1981, there were approximately ten station clerks employed at pumping and filtration stations at five different purification plants.
 
 
 5
 The station clerks were generally responsible for performing various functions at each station. These functions included timekeeping, recordkeeping, assembling reports, ordering supplies, and typing. Beginning in 1981, an effort was undertaken by the City to consolidate the duties of the station clerks for pumping and filtration stations under one station clerk for each plant. Pumping and filtration station clerk functions were consolidated on a rolling basis by attrition, which occurred usually by retirement or reassignment.
 
 
 6
 The present action was filed by the EEOC on behalf of four female station clerks, Annie Borowy, Rose Dukes, Dorothy Mitchell, and Rosemary Spinelli. The male comparator was Loren Reisig. As of January 1, 1984, the salaries of the female station clerks were as follows: Rosemary Spinelli, $15,745.02; Rose Dukes, $15,617.13; Annie Borowy, $14,292.53; and Dorothy Mitchell, $12,198.24. The record discloses that the male clerk, Reisig, had a salary of $22,020.79.
 
 
 7
 Reisig was hired by the City in 1958 after successfully completing the civil service examination for senior clerk. On December 1, 1958, he was assigned to work as a station clerk at the then newly constructed Crown Filtration Plant. As the first station clerk at Crown, Reisig established a filing system, handled stock inventory, and devised forms for the plant to use.
 
 
 8
 In 1961, Reisig was transferred to the Division Avenue plant and for a time was responsible for performing station clerk duties at both Crown and Division Avenue. On May 21, 1965, Reisig received a temporary appointment to principal clerk. After successful completion of the principal clerk civil service examination, Reisig was "legally" appointed on September 16, 1966.
 
 
 9
 From 1965 through 1970, Reisig performed station clerk duties at three different plants (sometimes simultaneously) and oversaw the work of a junior clerk at a fourth plant. As a result, Reisig, unlike the female plaintiffs, has operated all of the City's pumping and filtration stations.
 
 
 10
 In 1974, Reisig received legal appointment to the position of chief clerk after passing the civil service examination for the chief clerk position. Reisig had earlier been temporarily appointed to the position but had not passed the examination at that time.
 
 
 11
 While a station clerk, Reisig developed a manual regarding timekeeping and departmental policies for pumping and purification. He also compiled a manual on the history of the Division of Water and trained new clerks as necessary. Although the station clerk's duties at pumping and filtration stations began to be consolidated in 1981, Reisig did not assume consolidated duties until March 1984. By this time, all female station clerks had been assigned consolidated duties. Prior to March 1984, Reisig's station clerk's duties covered only the Baldwin Purification Station. However, Reisig's responsibilities included timekeeping and clerical functions, supervising personnel, implementing and updating timekeeping manuals, training new employees, and developing new manuals.
 
 
 12
 Annie Borowy was hired by the City on April 4, 1972, and became a station clerk on December 9, 1974. In August 1982, Borowy assumed consolidated duties as station clerk at the Crown Filtration and Crown Pumping Stations. According to Borowy, she was the first station clerk to receive consolidated responsibilities.
 
 
 13
 In 1975, Borowy was appointed junior personnel assistant after completing the civil service examination. Borowy testified on deposition that she was not interested in taking any other civil service test for a higher classification. During her tenure with the City, Borowy had never been assigned responsibilities for supervising the work of other employees, developing training materials, nor training other station clerks.
 
 
 14
 Rose Dukes was hired by the City on June 16, 1966, after completing a typing test. In 1973, she accepted a position as the station clerk at the Nottingham Pumping Station. From 1973 to 1983, her duties involved payroll and recording work, and then in 1983, the Nottingham Pumping and Purification Stations were consolidated, and Dukes became responsible for both plants.
 
 
 15
 Dukes did not complete the civil service examination for principal clerk until 1980 or 1981. However, no principal clerk appointments were awarded from the eligibility list produced from that administration of the examination. Dukes sat for the examination again and received a principal clerk appointment in February 1985.
 
 
 16
 Dorothy Mitchell began working as a station clerk at the Nottingham Filtration Station in 1982. She began her employment with the City in June 1981 after successfully completing a civil service examination. Her duties at Nottingham included timekeeping, computing chemical usage, ordering supplies, and preparing monthly reports.
 
 
 17
 As part of the overall effort to consolidate, Mitchell's station clerk duties were phased out. From March 1983 until July 1984, she was assigned to the department's data unit. In July 1984, however, Mitchell transferred to the Baldwin station where she replaced Reisig as station clerk. When she arrived at Baldwin, the station clerk duties for Baldwin had already been consolidated.
 
 
 18
 Mitchell was promoted to the classification of senior clerk, as a temporary appointment, when she assumed the consolidated station clerk duties at Baldwin. In 1986, she received a temporary appointment as principal clerk, and upon successful completion of the examination, her appointment to principal clerk was made "legal."
 
 
 19
 Rosemary Spinelli assumed the duties as station clerk in October 1974. She began her employment with the City, however, on September 10, 1964, as a receptionist. In 1972, Spinelli transferred to the Department of Public Utilities with the classification of senior clerk. Her assignment at that time was payroll. She completed the civil service examination for principal clerk and was promoted to that classification on May 1, 1973. Spinelli was the longest employed and highest paid of the four female employees principally involved in this action.
 
 
 20
 Spinelli's duties at the Division Avenue Purification Plant consisted of recording chemical usage, timekeeping, ordering supplies, and preparing monthly reports. She was assigned consolidated duties for the Division Avenue Plant sometime in 1982 or 1983. Spinelli did not have responsibility for training or supervising other station clerks. She completed the civil service examination for chief clerk on three occasions. On the first, she ranked highest on the eligibility list but no chief clerk appointments were made, and her eligibility expired. She took the test again in 1978, ranking third on the eligibility list, but no appointments were made. One chief clerk appointment was made from this list to another division, and this appointment was awarded to a female. On her third attempt, she ranked fourth or fifth on the eligibility list, but the appointments were awarded to other individuals, at least two of which were females.
 
 
 21
 EEOC insists on appeal that the district court erred in entering summary judgment because general issues of material fact were raised in the pleadings, depositions, and affidavits on file. See Fed.R.Civ.P. 56(c).
 
 II.
 A. The Equal Pay Act
 1. Prima Facie Case
 
 22
 In order to establish a prima facie case under the Equal Pay Act a plaintiff must "demonstrat[e] that she performed a job that required substantially equal skill, effort, and responsibility, but that she received less than equal pay." Rabidue v. Osceola Refining Co., 805 F.2d 611, 623 (6th Cir.1986), cert. denied, 107 S.Ct. 1983 (1987). See Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974); Henry v. Lennox Indus., Inc., 768 F.2d 746, 752 (6th Cir.1985); Bence v. Detroit Health Corp., 712 F.2d 1024, 1029 (6th Cir.1983), cert. denied, 465 U.S. 1025 (1984); Odomes v. Nucare, Inc., 653 F.2d 246, 250 (6th Cir.1981). Thus, three elements must be shown to make out a claim under the Act: "(1) that [plaintiff's] employer is subject to the Act; (2) that [plaintiff] performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) that [plaintiff] was paid less than the employees of the opposite sex providing the basis of comparison." Peters v. City of Shreveport, 818 F.2d 1148, 1153 (5th Cir.1987), cert. denied, 108 S.Ct. 1101 (1988).
 
 
 23
 In the present case, the City does not contend that the Act does not apply to it. Moreover, there is no dispute that an "[i]nequality of pay" exists among the male and female station clerks. See Bence, 712 F.2d at 1026; Corning Glass Works, 417 U.S. at 195. The dispute therefore focuses on the second element above; viz., whether "equal work" is involved. 29 U.S.C. Sec. 206(d)(1).
 
 
 24
 An Equal Pay Act plaintiff must show "substantially equal work" is being performed. Henry v. Lennox Indus., Inc., 768 F.2d at 752. "A showing of 'equal work' requires only that the plaintiff prove that the 'skill, effort and responsibility' required in the performance of the jobs compared are substantially equal." Peters v. City of Shreveport, 818 F.2d at 1153 (quoting 29 U.S.C. Sec. 206(d)(1)); see also Odomes, 653 F.2d at 250 ("Congress did not intend through use of the phrase 'equal work' to require that the jobs be identical. Instead, to effectuate the remedial purposes of the Equal Pay Act only substantial equality of skill, effort, responsibility and working conditions is required.") (citation omitted); Jones v. Flagship Int'l, 793 F.2d 714, 722-23 (5th Cir.1986), cert. denied, 479 U.S. 1065 (1987). The "equal work" issue "must be resolved by an overall comparison of the work, not its individual segments." Odomes, 653 F.2d at 250; Gunther v. County of Washington, 623 F.2d 1303, 1309 (9th Cir.1979); aff'd, 452 U.S. 161 (1981).
 
 
 25
 The Eighth Circuit has explained that comparing jobs requires analysis of a broad range of factors:
 
 
 26
 Whether two jobs entail equal skill, equal effort, or equal responsibility requires a practical judgment on the basis of all the facts and circumstances of a particular case. Skill includes such considerations as experience, training, education, and ability. Effort refers to the physical or mental exertion necessary to the performance of a job. Responsibility concerns the degree of accountability required in performing a job. Application of the Equal Pay Act depends not on job titles or classifications but on the actual requirements and performance of the job. In all cases, therefore, a court must compare the jobs in question in light of the full factual situation and the broad remedial purpose of the statute.
 
 
 27
 EEOC v. Universal Underwriters Ins. Co., 653 F.2d 1243, 1245 (8th Cir.1981). See also Glenn v. General Motors Corp., 841 F.2d 1567, 1569 (11th Cir.), cert. denied, 109 S.Ct. 378 (1988). Likewise, in Odomes, we recognized that the issue of equal work "must be determined on a case-by-case basis...." 653 F.2d at 250.
 
 
 28
 In comparing jobs under the Act (at least for purposes of establishing a prima facie case) it must be emphasized that the jobs and not the employees are compared. Thus, "only the skills actually required by [the comparable] jobs, not the abilities of the persons currently in those position are relevant [and] it is the job as a whole, not just selected aspects of it that must form the basis for comparison." Goodrich v. International Bhd. of Elec. Workers, AFL-CIO, 815 F.2d 1519, 1524 (D.C.Cir.1987) (citing Hein v. Oregon College of Educ., 718 F.2d 910, 914 (9th Cir.1983)). See also EEOC v. Central Kansas Medical Center, 705 F.2d 1270, 1273 (10th Cir.1983). Although the Act is silent on the question, the Supreme Court has held an Equal Pay Act plaintiff has the burden of proof as to the prima facie case. Corning Glass Works, 417 U.S. at 195.
 
 2. Affirmative Defenses
 
 29
 Once the plaintiff establishes a prima facie case of unequal pay based upon sex for substantially equal work, "the burden shifts to the employer to show that the differential is justified under one of the Act's four exceptions." Corning Glass Works, 417 U.S. at 196. The Act provides that unequal pay to members of opposite sexes performing substantially equal work is permissible if "made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex...." 29 U.S.C. Sec. 206(d)(1).
 
 
 30
 We have indicated that the employer's burden of establishing these defenses is a "heavy" one. Odomes, 653 F.2d at 251 (citing EEOC v. Whitin Machine Works, Inc., 635 F.2d 1095, 1098 (4th Cir.1980)). Moreover, "[a]n employer cannot avail itself of any of the exceptions to Sec. 206(d)(1) unless it proves that 'the factor of sex provides no part of the basis for the wage differential.' " Bence, 712 F.2d at 1029 (quoting Brennan v. Owensboro-Daviess County Hosp., 523 F.2d 1013, 1031 (6th Cir.1975), cert. denied, 425 U.S. 973 (1976)).
 
 B.
 
 31
 The district court in the present case found that the comparative jobs in the present case were not substantially equal. Specifically, the court noted that the record indisputably established that Reisig performed a multitude of tasks on an ongoing basis that were not performed by any of the female station clerks. Reisig's position included responsibilities in areas of training, supervision, and development, which were not required of the other station clerks. Thus, the court found the positions unequal. We agree.
 
 
 32
 Extra tasks that take little time and are only of peripheral importance will not render a substantially equal position unequal. EEOC v. Central Kansas Medical Center, 705 F.2d at 1273. Where an employer maintains that the work is unequal, it must be shown that the additional "skill, effort and responsibility" required of the comparator's position is neither "substantial" nor "inconsistently assigned." Odomes, 653 F.2d at 250 (quoting Usery v. Columbia University, 568 F.2d 953, 960 (2d Cir.1977)); see also Spaulding v. University of Washington, 740 F.2d 686, 697 (9th Cir.), cert. denied, 469 U.S. 1036 (1984).
 
 
 33
 In the present case the extra duties required of Reisig's position rendered his job unequal to plaintiffs'. Admittedly, all station clerks perform a number of similar core duties, including timekeeping, recordkeeping and payroll. Indeed, the City does not contest the EEOC's assertion that the positions are to some extent similar. Yet, as the district court noted, the record is "unquestionably clear" that the position Reisig filled for the City involved skill, effort, and responsibility not required by the female plaintiffs. The record establishes that Reisig was responsible for continuing education, supervision, and the training of station clerks, all of which required skill and effort not necessary to plaintiffs' positions. In our view, these additional responsibilities were not inconsequential but were an important part of Reisig's position. Thus, the job required of Reisig was "unequal" within the meaning of the Act to that performed by the other station clerks. We hold that given this evidence, a fair-minded juror could not return a verdict for the EEOC. Thus, summary judgment was properly entered in favor of defendant.[2] See Anderson v. Liberty Lobby, Inc., 106 S.Ct. at 2512.
 
 
 34
 Assuming, arguendo, that the EEOC established a prima facie case, the district court also found that the differences between the wages paid the male comparator and the females were justified by seniority, merit, and factors other than sex. The court noted that Reisig began his employment with the City in 1958, at least six years prior to the closest female station clerk. Also, Reisig began working for the City as a station clerk in 1959, while the closest females began working in this capacity for the City in 1974. Reisig thus had far more seniority than any female station clerk, both in terms of years with the City and years as station clerk. Merit also justified the salary disparities given Reisig's "exemplary service record, creativity, ... performance of tasks and shouldering of responsibility above and beyond the bare minimum...."
 
 
 35
 Furthermore, the district court concluded that "factors other than sex, including a blend of seniority and special usefulness, rather than maleness, was responsible for the disparity in salaries." The court noted that Reisig was a "superstar" within the Department of Public Utilities and that he had shown surprising initiative and ability in fulfilling his responsibilities. Thus, Reisig's "unique employment history and the evidence that he had carved out for himself a special niche at the ... [Department] ... as a senior employee," justified the disparity in salaries.
 
 
 36
 On appeal the EEOC argues that the district court erred in reaching the City's affirmative defenses because the City failed to plead such defenses as required by Fed.R.Civ.P. 8(c). See Kouba v. Allstate Ins. Co., 691 F.2d 873, 875 (9th Cir.1982) ("[T]he employer must plead and prove [affirmative defenses under the Act]."); see also Jackson v. Seaboard Coastline R.R., 678 F.2d 992, 1010 (11th Cir.1982). Because we find the EEOC has not established a prima facie case, we deem it unnecessary to resolve this issue.
 
 III.
 
 37
 We find that under the facts of the present case, a reasonable jury could not conclude the comparators "performed ... job[s] that required substantially equal skill, effort, and responsibility...." Rabidue, 805 F.2d at 623. Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 29 U.S.C. Sec. 206(d)(1) provides as follows:
 No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.
 
 
 [2]
 The EEOC also argues that the fact Reisig received consolidated purification and pumping station clerk duties after the females indicates the City favored him. However, it is undisputed that the City consolidated plant duties as the opportunity became available, based on attrition. Therefore, the City's decision to consolidate was based on factors other than any alleged desire to favor Reisig or discriminate against the female clerks