884 F.2d 578
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Abid AL-MARAYATI, Plaintiff-Appellant,
v.
UNIVERSITY OF TOLEDO; Glen Driscoll; Karl Vezner; and
Sharron E. Doerner, Defendants-Appellees.
 No. 88-3643.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1989.
 
 Before BOYCE F. MARTIN, Jr., WELLFORD and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Abid Al-Marayati appeals from a judgment in favor of defendants-appelles, the University of Toledo ("the University"); its president, Glen Driscoll; and two former chairmen of the University's Department of Political Science, Karl Vezner and Sharron Doerner, in this action filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. For the reasons that follow, we affirm.
 
 I.
 
 2
 Al-Marayati, a native of Iraq, embraces the tenets of the Shiite sect of the Muslim religion. In this action commenced under Title VII on May 10, 1985, he contends that he has suffered discrimination since 1975 because of his national origin and religious beliefs in that the defendants intentionally gave him poor teaching evaluations and merit salary increases, inhibited and punished him for expressing his beliefs concerning matters affecting the University, and harassed him in the hope that he would resign his tenured position. He further contends that the defendants retaliated against him for filing a civil rights charge by reprimanding him for commenting on the qualifications of defendant Doerner when Doerner was being considered for a promotion.
 
 
 3
 On February 21, 1986, the district court dismissed all acts of alleged discrimination that occurred outside the 300-day filing period as time-barred, but held that the events could be used as background on the timely charges if otherwise relevant. On May 11, 1987, Al-Marayati sought to amend his complaint to dismiss the Title VII allegations and proceed instead under 42 U.S.C. Sec. 1983. He also sought to allege a deprivation of his First Amendment rights in addition to unlawful discrimination and retaliation and requested a jury trial. The district court denied leave to amend, however, holding that allowing Al-Marayati to recast his complaint under section 1983 would be frivolous in that the court had previously dismissed all events occurring outside the 300-day filing period, the allegations regarding the First Amendment occurred outside the applicable limitations period, and the Eleventh Amendment barred recovery of any monetary damages from the University and the defendants in their official capacity.
 
 
 4
 Al-Marayati filed a second motion to amend on November 6, 1987, seeking to add a claim for intentional employment discrimination under 42 U.S.C. Secs. 1981 and 1985. He contended that such a claim was not cognizable until the Supreme Court's decision in St. Francis College v. Al-Khazraji, 481 U.S. 604 (1987). On December 31, 1987, the district court denied leave to amend. In light of a trial date of February 16, 1988, the district court held that defendants would have insufficient time to conduct discovery and would be unfairly surprised and prejudiced by a complete change of theory on the eve of trial.
 
 
 5
 On January 26, 1988, Al-Marayati sought a continuance on the grounds that defendant Doerner's medical condition precluded the conclusion of his oral deposition and testimony at trial. However, the district court denied the motion without opinion on February 3, 1988.
 
 
 6
 A nonjury trial commenced on February 16, 1988. On March 9, 1988, at the conclusion of plaintiff's case, the defendants jointly moved for dismissal under Rule 41 of the Federal Rules of Civil Procedure. The district court denied the motion, concluding that Al-Marayati had presented sufficient evidence to establish prima facie claims of discrimination and retaliation. The trial then proceeded to a conclusion.
 
 
 7
 On June 21, 1988, the district court entered its findings of fact and conclusions of law. The district court held that plaintiff was not entitled to relief because he had failed to establish that the reasons given for the employment actions in question were pretextual. This timely appeal followed.
 
 
 8
 The record shows that Al-Marayati has repeatedly filed grievances within the University's structure for resolving disputes. It is undisputed that every grievance has been ultimately rejected following extensive review within the University. The record also establishes that Al-Marayati maintained a steady stream of memoranda within the Political Science Department wherein he complained of employment decisions and raised allegations of discrimination among fellow political science professors.
 
 
 9
 After the denial of Al-Marayati's fourth grievance on October 4, 1983, the University's Faculty Conference Committee sent a memorandum to the University's president, defendant Driscoll, wherein it stated its conclusion that Al-Marayati's persistent memos within the department were becoming counterproductive, that Al-Marayati had ignored the Committee's previous request that he cease the flow of memoranda within the department, and recommended that defendant Driscoll inform Al-Marayati in the strongest possible terms that his actions within the department were preventing him and other members of the faculty from performing their responsibilities as University professors.
 
 
 10
 Driscoll testified that he corresponded with Al-Marayati on November 21, 1983, and informed him that he had exhausted all remedies within the University and that he should seek redress elsewhere, specifically mentioning the courts. He additionally informed Al-Marayati that he would request that the Board of Trustees approve disciplinary recommendations if Al-Marayati did not refrain from raising old grievances within the University.
 
 
 11
 During the following academic year, 1983-1984, defendant Doerner was recommended for promotion to the rank of full professor by then-department chairman, defendant Vezner, and the corresponding faculty committee. Although plaintiff did not attend any of the departmental meetings and chose not to submit an absentee ballot, he went outside of the University's processes and objected to Doerner's promotion with inter-University memoranda wherein he accused Doerner of being discriminatory on the basis of race and politics.
 
 
 12
 The Political Science Department ultimately decided to request disciplinary action against Al-Marayati and informed President Driscoll of its conclusion. Driscoll subsequently informed Al-Marayati on December 21, 1984, that he viewed the substance of the memoranda to be an effort to renew old grievances and noted that he had previously warned Al-Marayati on two prior occasions to refrain from "plowing the same ground." Noting that Al-Marayati had filed charges against the University with the Equal Employment Opportunity Commission, Driscoll encouraged Al-Marayati to pursue avenues of relief outside of the University. He instructed Al-Marayati to cease attempts to use the University's internal grievance mechanisms to resolve his old grievances and informed Al-Marayati that if he persisted in renewing old grievances, he would recommend to the Board of Trustees that he be suspended without pay. Driscoll concluded his letter to Al-Marayati by stating that the letter should be viewed as an official reprimand.
 
 
 13
 There was significant testimony at trial regarding the conduct of Al-Marayati and others within the University's Political Science Department which indicates that Al-Marayati's relationship with his colleagues has steadily deteriorated since 1975. Department members testified that plaintiff refrained from speaking to colleagues who, while performing their duties as members of faculty committees or other positions, evaluated him less favorably than others. Al-Marayati stopped attending departmental meetings during the 1982-1983 academic year, and there was considerable testimony that he affected the department's morale. Finally, there was testimony that he was repeatedly advised over the years that he should "bury the hatchet," but that all attempts at reconciliation between him and other members of the department had been unsuccessful.
 
 
 14
 The issues presented in this appeal are whether the district court erred (1) in finding that Al-Marayati was not the subject of intentional discrimination on the basis of his religion or national origin; (2) in finding that Al-Marayati's censure and reprimand were not in retaliation for the exercise of his Title VII rights; (3) in denying Al-Marayati's motion for a continuance; (4) in denying Al-Marayati's two motions to amend his complaint; and (5) in dismissing several of Al-Marayati's claims as untimely.
 
 II.
 
 15
 In Daniels v. Board of Education, 805 F.2d 203, 208 (6th Cir.1986), we held that when a district court decides "the ultimate factual issue, whether the plaintiff was a victim of intentional discrimination," then the focus of our inquiry on appeal is not on whether the district court properly applied the correct legal standard in reaching the ultimate question of discrimination, but whether the district court's finding is supported by substantial evidence. This court reviews a district court's findings of fact only for clear error under Rule 52(a) of the Federal Rules of Civil Procedure and will overturn a district court's findings of fact only when it "is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).
 
 
 16
 If a district court's findings "are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial court can be aware of the variations in demeanor and tone of voice that bears so heavily on the listener's understanding of and belief in what is said." Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985). As noted in Henry v. Lennox Indus., Inc., 768 F.2d 746 (6th Cir.1985),
 
 
 17
 [t]he reviewing court oversteps the bounds of its duty under Rule 52 if it undertakes to duplicate the role of the lower court.... If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the Court of Appeals may not reverse it even though convinced that had it been sitting as the trier of fact it would have weighed the evidence differently.
 
 
 18
 Id. at 750 (quoting Anderson, 470 U.S. at 573-74).
 
 A.
 
 19
 Al-Marayati contends that he suffered discrimination on the basis of his national origin and religion in the manner in which he was evaluated pursuant to the University's procedures. In response to the University's proffered reasons for the alleged discriminatory adverse employment decisions, Al-Marayati relies upon three instances which he alleges prove discriminatory animus. He relies on a note found in his mailbox wherein defendant Doerner was critical of the Iraq government and a letter Doerner penned to him while he was in Kuwait on leave of absence. In the letter, Doerner wrote of the hot and humid weather in Kuwait and noted his hope that Kuwait, like the American South, was an air-conditioned society. He further warned Al-Marayati to "keep his back against the wall." Doerner testified on deposition that the comments on the note were a furtherance of a lunch conversation between Doerner and Al-Marayati concerning Iraq. With regard to the letter, Doerner testified the first comment was in reference to an earlier conversation in which the effect that Kuwait's hot and humid weather would have on Al-Marayati's bronchitis was discussed, and the latter comment was an expression of his concern for Al-Marayati's safety as an American in the Middle East. Finally, testimony was presented by one of Al-Marayati's colleagues of hearing racial comments in reference to plaintiff as a "camel driver". However, the testimony is vague, at best. The professor in question testified that he quickly tries to strike such comments from his mind and therefore could provide little information about them. He was unable to remember who made the comments or when they were made.
 
 
 20
 With regard to the above three incidents, the district court found that they were not indicative of any discriminatory animus on behalf of the defendants, and that the racial comments could not be linked to any of the defendants. After reviewing the record, we conclude that the district court's findings are not clearly erroneous.
 
 B.
 
 21
 In his complaint, Al-Marayati contends that three separate actions taken by the defendants constitute retaliatory conduct as prohibited by Title VII. At trial, however, it appears that he only pursued one of these actions, his reprimand by the University, and additionally sought to establish that the merit increase he received after the University learned of his Title VII complaint was retaliatory.
 
 
 22
 Section 704(a) of Title VII, 42 U.S.C. Sec. 2000e-3, prohibits an employer from discriminating against an employee "because he has made a charge, testified, assisted or participated in any manner in any investigation, proceeding, or hearing" under Title VII. However, employees are not protected or insulated from discipline or discharge merely due to the fact that they have filed charges of discrimination or opposed employer practices that they believe to be discriminatory. This court has made it clear that employers do not violate Title VII when they make an adverse employment decision regarding an employee within a protected category when the decision is made for reasons such as insubordination, poor work performance, difficulty in getting along with fellow employees, or where the potential exists that the employee's continued presence would cause resentment or hostility. See Daniels, 805 F.2d at 208-09; Weems v. Ball Metal and Chem.Div., Inc., 753 F.2d 527, 529-30 (6th Cir.1985); Morvay v. Maghielse Tool and Die Co., 708 F.2d 229, 233 (6th Cir.), cert. denied, 464 U.S. 1011 (1983).
 
 
 23
 In light of the substantial evidence in the record of Al-Marayati's conduct, we conclude that the district court did not err in concluding that the adverse employment decisions of which Al-Marayati complains were not in retaliation for the exercise of his Title VII rights. An employer is allowed to maintain internal discipline and a stable work environment, and [a]n employee is not protected by Title VII when he violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his employer's goals. Unt v. Aero Space Corp., 765 F.2d 1440, 1446 (9th Cir.1985); see also Rosser v. Laborers' Int'l Union, 616 F.2d 221, 223 (5th Cir.), cert. denied, 449 U.S. 886 (1980).
 
 C.
 
 24
 Al-Marayati contends that the district court erred when it denied his request for a continuance of the trial date and to reopen discovery on the basis that defendant Doerner's medical condition precluded Al-Marayati from obtaining further discovery and Doerner's testifying at trial. Doerner's physician opined at the time that Doerner's heart condition was such that further testimony was potentially life-threatening.
 
 
 25
 The question of a continuance is addressed to the sound discretion of the district judge and will not be reversed on appeal unless there has been a clear abuse of discretion. Pingatore v. Montgomery Ward & Co., 419 F.2d 1138, 1141 (6th Cir.1969), cert. denied, 398 U.S. 928 (1970). In this instance, we do not find a clear abuse of discretion. There was no evidence at the time of the denial of the motion that Doerner's medical condition would ever improve to the point that he could withstand the rigors of trial or even a discovery deposition. Moreover, Al-Marayati is unable to show any substantial prejudice in that the discovery he had already obtained from Doerner was inadequate. Doerner's 150-page discovery deposition, his answers to written interrogatories, and his six-page affidavit were admitted without protest by the defendants, and the plaintiff has not established why live testimony was needed. Accordingly, we do not find error.
 
 D.
 
 26
 Al-Marayati contends that the district court erred in denying his two motions to amend. In his first motion filed on May 11, 1987, Al-Marayati sought to dismiss his allegations under Title VII and to proceed instead under 42 U.S.C. Sec. 1983. In denying the motion, the district court held that allowing the plaintiff to recast his complaint as a section 1983 action would be frivolous because the court had on February 21, 1986, dismissed all of the allegations occurring outside of the 300-day period, the new allegations regarding deprivation of First Amendment rights occurred outside the applicable statute of limitations for section 1983 actions, and the Eleventh Amendment stood as an absolute bar to any section 1983 action for monetary damages. In this connection, we note that Al-Marayati's action had been pending since May 10, 1985.
 
 
 27
 In his second motion to amend filed on November 6, 1987, Al-Marayati sought to amend his complaint to allege violations of his rights under 42 U.S.C. Secs. 1981 and 1985. The district court denied the motion because the case was in the final stages of trial preparation, and the defendants would be prejudiced by being denied the opportunity to adequately prepare and file any motions regarding the added causes of action.
 
 
 28
 As noted by the Supreme Court in Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971), a district court is empowered to deny a motion for leave to amend a complaint if the denial is based upon valid grounds, and a trial court's discretion whether or not to grant leave to amend is subject to limited appellate review for abuse of discretion. In Marx v. Centran Corp., 747 F.2d 1536, 1550-51 (6th Cir.1984), cert. denied, 471 U.S. 1125 (1985), this court upheld the district court's refusal to allow amendment on "futility of amendment" grounds. We held that the district court had not abused its discretion in refusing to allow a plaintiff to amend his complaint to add claims which are unsupported by facts or were time-barred.
 
 
 29
 With respect to Al-Marayati's first motion to amend, we do not find abuse of discretion. As the Supreme Court has recently held in Will v. Michigan Dept. of State Police, 109 S.Ct. 2304, 2310-11 (1989), state officials acting in their official capacities are not "persons" under section 1983. In this instance, the alleged First Amendment deprivation was the decision by President Driscoll to prohibit Al-Marayati from commenting on matters affecting the University. President Driscoll was sued solely in his official capacity and, under the holding in Will, was clothed with immunity under the Eleventh Amendment. Accordingly, the district court correctly concluded that allowing the amendment would be futile.
 
 
 30
 We are also of the view that the district court did not err in denying the second motion to amend. The case was on the eve of trial, discovery was in its later stages, and it would have been of obvious prejudice to require the defendants to defend on a theory not yet presented. Plaintiff contends that he was not aware of the potential cause of action under section 1981 until the Supreme Court's holding in St. Francis College v. Al-Khazraji, 481 U.S. 604 (1987). However, that decision was handed down one month after Al-Marayati's first motion to amend, and we see no justification for allowing him to wait until the eve of trial to seek to amend his complaint.
 
 E.
 
 31
 The final issue before us is Al-Marayati's contention that the district court erred in barring him from pursuing acts of discrimination occurring before the 300-day limitations period. Relying upon this court's holding in Sawchik v. E.I. DuPont de Nemours & Co., 783 F.2d 635 (6th Cir.1986), the district court determined that the continuing violation theory was inapplicable and, therefore, dismissed all alleged acts occurring outside the 300-day filing period. However, the district court allowed the acts as background material.
 
 
 32
 In United Air Lines v. Evans, 431 U.S. 553, 557 (1977), the Supreme Court held that the present effects of an earlier time-barred action are insufficient to constitute a present or continuing violation which can be the subject of a timely EEOC charge. The Court concluded:
 
 
 33
 A discriminatory act which is not made the basis of a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.
 
 
 34
 Id. at 558. In this instance, it is undisputed that Al-Marayati filed grievances and sought relief within the avenues of the University at the time of the alleged discriminatory actions. Clearly, he was of the view at that time that he had suffered discrimination and, therefore, should have engaged the machinery of Title VII if he did not obtain the desired redress within the University.
 
 III.
 
 35
 Accordingly, for all of the foregoing reasons, the judgment of the district court is AFFIRMED.