983 F.2d 1071
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Pamela K. WIENKE, Plaintiff-Appellant,
v.
HAWORTH, INC., Defendant-Appellee.
 No. 92-1021.
 United States Court of Appeals, Sixth Circuit.
 Jan. 11, 1993.
 
 Before KEITH, DAVID A. NELSON and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Pamela Wienke appeals the summary judgment for her former employer, Haworth, Inc., in her sex discrimination suit brought under Title VII of the Civil Rights Act of 1964 and Michigan's Elliott-Larsen Civil Rights Act. She also challenges the district court's refusal to apply the "mixed motives" analysis, to extend discovery, and to grant her untimely request for a jury trial. Finally, Wienke asks that, in the event of remand, District Judge Robert Holmes Bell be recused.
 
 
 2
 We believe the district court committed no error and we shall, therefore, affirm.
 
 I.
 
 3
 Pamela Wienke was employed in the Marketing Design Services Department of Haworth, Inc. between February 1984 and November 1987. Haworth is an office furniture systems manufacturer in Holland, Michigan. She was terminated following a clash with her immediate supervisor, Frederick (Ric) Reed, over a memorandum written by Wienke concerning Reed's actions in disciplining Tom Bowman, one of Wienke's subordinates.
 
 
 4
 The genesis of the controversy was a trivial dispute involving Tom Bowman's attempts to attain a mobile file cabinet. Bowman tried on two occasions to move one of these units into his work area. After the first incident, Reed told Bowman that the mobile unit was needed elsewhere and that Bowman should follow standard office procedures for obtaining a mobile unit. A short time later, Bowman took another unit from an empty office. Reed had the unit removed from Bowman's work area and sought to discipline Bowman. In a discussion with Wienke, Reed asked for support from Wienke in disciplining Bowman. Wienke said that she needed time to consider whether she could support Reed's position. The next day, without further discussing the matter with Reed, Wienke sent Reed a memorandum. In the pertinent part of her memorandum, directed to Reed and circulated to his superior, John Barrett and Jack Edsenga, a human resources supervisor and another human resources employee, Wienke stated:
 
 
 5
 It is for this reason that I again question your heavy involvement with Tom's drawer stack.... In my opinion, that action was a blatant display of where your priorities lie. I would think that as Manager you would certainly have more concerns than the components in our offices.
 
 
 6
 My other point is that this disruption has further decreased morale, productivity, and respect. Unfortunately, I will be paying the price through wasted time, unproductivity/attitudes of all members (including Facilities) who look upon this situation with disbelief and humor. Is it worth it?
 
 
 7
 I therefore, stand by my statement of yesterday in which I cannot agree with or support remedial action towards Tom Bowman be it a day of suspension or a written remand.
 
 
 8
 That same day, Reed met separately with Barrett and Edsenga to discuss Wienke's memorandum. They agreed that the memorandum was "insubordinate," and concluded that under Haworth's policies Wienke should be suspended. After her suspension, Wienke was invited to a meeting with Reed and Edsenga at Haworth's offices where she was fired pursuant to Haworth's policy that insubordination may result in termination. Reed replaced Wienke with a male employee.
 
 
 9
 After exhausting administrative procedures, Wienke filed suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Michigan's Elliott-Larsen Civil Rights Act, MCLA § 37.2101 et seq.; Mich.Stat.Ann. § 3.548 et seq. The district court granted Haworth's motion for summary judgment, concluding that while Wienke had produced evidence satisfying the initial discrimination inquiry, Haworth had also established a legitimate, nondiscriminatory reason for her discharge. The court determined that Wienke had failed to present sufficient evidence to prove that Haworth's alleged reason for her termination--insubordination--was pretextual.
 
 II.
 
 10
 We review de novo Wienke's appeal of the district court's grant of summary judgment under Rule 56. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). In Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 312 (6th Cir.1989), we noted:
 
 
 11
 [T]he plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.
 
 
 12
 (Citation omitted.)
 
 1. Pretext
 
 13
 The district court determined that Wienke's suit was subject to summary judgment because she failed to show that Haworth's stated reason for firing her was a pretext for a discriminating purpose. This inquiry under Title VII is governed by the well settled principles set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 804 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981), and their progeny. Michigan courts have generally applied the same analytical framework to Elliott-Larsen claims. See Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1311-12 (6th Cir.1989); Rabidue v. Osceola Ref. Co., 805 F.2d 611, 617 (6th Cir.1986), cert. denied, 481 U.S. 1041 (1987).
 
 
 14
 This line of cases provides a burden shifting framework, although the ultimate burden of persuasion "remains at all times with the plaintiff." Henry v. Lennox Indus., Inc., 768 F.2d 746, 750 (6th Cir.1985). First, the plaintiff must show that:
 
 
 15
 (1) she was within a protected class; (2) was subjected to an adverse employment action; (3) was qualified for the particular position; and (4) was replaced by a person not a member of the protected class.
 
 
 16
 Gagne, 881 F.2d at 312-13. Second, if the employee meets these requirements, the defendant must "articulate some legitimate, non-discriminatory reason for the employee's discharge." McDonnell Douglas, 411 U.S. at 802. In this case, the "legitimate, non-discriminatory reason" cited by Haworth was Wienke's insubordination. Finally, the employee is required to show that the defendant's proffered reason for discharge was pretextual. Burdine, 450 U.S. at 256.
 
 
 17
 There is no dispute in this appeal that Wienke established a prima facie case of discrimination or that Haworth responded with sufficient evidence of a legitimate, nondiscriminatory decision. The issue for our determination is whether Wienke presented sufficient admissible evidence in opposition to Haworth's stated reason for firing her to raise a justiciable issue of pretext.
 
 
 18
 There are a number of ways to establish pretext. A plaintiff may show it directly by establishing that the proffered reason is unworthy of credence, or indirectly by showing that discriminatory reasons more likely motivated the employer's decision. See id. at 248, 256. Wienke relies on several sources in her attempt to raise a genuine issue of pretext.
 
 
 19
 First, she claims that the stated reason for her discharge--insubordination--has no basis in fact because she did not at any time disobey a direct order of her supervisor. This argument is unpersuasive. An employee can be insubordinate without disobeying an order. In this case, Wienke wrote and circulated an unsolicited memo, sharply critical of her supervisor, in which she refused to support his decision to discipline an employee for whom she was responsible. She knew, moreover, that Reed had been hired to "shape up" the department and that her memo was a challenge to one of his supervisory decision. Finally, she sent copies of the memo to Reed's supervisor and two personnel employees. We think Wienke's disagreement with the employer's legitimate reasons for discharging her do not meet the burden of "presenting evidence to show that the reasons given are an attempt to cover up the employer's alleged real discriminatory motive." Irvin v. Airco Carbide, 837 F.2d 724, 726 (6th Cir.1987).
 
 
 20
 Next, Wienke relies on an allegedly derogatory comment by Reed and some general observations by two other employees at Haworth to establish that the stated reason of insubordination was merely pretextual. These statements are also the basis for Wienke's claim that Reed had a predisposition to discriminate against women and that he acted upon that predisposition in terminating her. The statements are contained in the affidavits of Deb Donaldson and Harley Bricker. Donaldson stated that she once heard Reed yell at Wienke but never saw Reed yell at males in the office. She also stated that Reed stripped her of duties and criticized her work because of her pregnancy, and, more generally, that Reed regularly treated women more harshly and critically than men, lied, and did not like "confident" women. Bricker stated that after Wienke had called in sick one day, Reed remarked, "Oh, it must be female problems again." Except for the quoted statement attributed to Reed, the opinions of both affiants are generalized, isolated, conclusory, and unrelated to Wienke's firing. See Gagne, 881 F.2d at 316; Simpson v. Midland-Ross Corp., 823 F.2d 937, 941 (6th Cir.1987). The one statement attributed to Reed, which we assume for purposes of this issue was made, even taken together with the conclusory opinions of the affiants, while unseemly, does not warrant an inference that Reed was predisposed to discriminate against women or raise a triable issue of pretext regarding Wienke's dismissal.
 
 
 21
 Finally, Wienke asserts that she was treated differently than similarly situated men in her department. Specifically, she offers numerous conclusory assertions that a man who challenged Reed would not have been fired and, in her only allegation of fact, claims that she was not permitted to evaluate the employees under her supervision, unlike male superiors. The allegation that Wienke would not have been fired if she had been male is, of course, conclusory and plainly insufficient to raise a triable issue of pretext. The other allegation concerning her evaluation responsibilities also fails to raise a genuine factual issue for, even if true, it is unrelated to her firing and therefore of tenuous relevance. Moreover, another male counterpart, David Meeter, who was fired before Wienke, never completed a performance review either; therefore, the probative value of the "discrepancy" is even further diminished.
 
 
 22
 The district court did not err in finding that Wienke's evidence failed to raise a triable issue of pretext. Wienke offers only conclusions and isolated instances, some of them hearsay, that fail to show that insubordination was not the reason for Wienke's firing or that her gender had any role in the decision.
 
 2. Mixed Motives
 
 23
 Wienke next asserts that the derogatory comments attributed to Reed about Wienke's health and the allegedly differential treatment of Wienke required that the district court assign to the employer the burden to prove that she would have been fired even if gender had not been taken into account. This is the burden-shifting formula prescribed in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), for a so-called mixed motives discrimination case.
 
 
 24
 Under Price Waterhouse, when a plaintiff proves that gender was a motivating factor in an adverse employment decision, the employer "may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account." Id. at 258. The analysis presupposes the establishment of impermissible gender motivations by plaintiff. But we are not faced with a situation where there is evidence that impermissible gender considerations played a motivating part in the employment decision. Wienke has failed to produce any evidence that gender played a role in her termination and Price Waterhouse is thus inapplicable. The district court correctly declined to apply the mixed motives analysis.
 
 B. Discovery
 
 25
 Wienke next argues that the district court abused its discretion in denying her request to extend the deadline for completing discovery. She urges that the district court foreclosed her from deposing an important witness, former Haworth employee Linda Jones. Jones had given prior unsworn testimony to the EEOC that, Wienke argues, could have supported Wienke's contention that Reed was predisposed to discriminate against women.
 
 
 26
 We review the district court's rulings on discovery motions under an abuse of discretion standard. Theunissen v. Matthews, 935 F.2d 1454, 1465 (6th Cir.1991). Abuse of discretion is defined as "a definite and firm conviction that the trial court committed a clear error of judgment." Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989). A careful review of the record in this appeal convinces us that the district court's denial of Wienke's motion for an extension was not an abuse of discretion.
 
 
 27
 The complaint in this case was filed on November 15, 1990. The original scheduling order, issued in March 1991, called for the completion of discovery by September 1, 1991. Wienke's counsel attempted to schedule Mrs. Jones' deposition in July 1991. This attempt was frustrated by the open-heart surgery of Mrs. Jones' son. On August 2, Wienke's counsel served notice that Mrs. Jones' deposition would be taken on August 26, 1991. On August 14, counsel for Wienke was notified that Mrs. Jones had been scheduled for exploratory surgery on August 23, and would not be able to give her deposition. Within a week of learning of this development, Wienke moved to extend the discovery deadline to October 1. The district court granted this motion.
 
 
 28
 Wienke's counsel rescheduled Mrs. Jones' deposition for September 26, at the offices of a Chicago law firm. Notice of the rescheduled deposition was served on September 11. One week after the notice was served, Mrs. Jones reported that she had been hospitalized again and would not be able to get to Chicago at the scheduled time. The deposition was reset for Mrs. Jones' home in North Carolina on September 30. At the request of Haworth's counsel, it was agreed that the deposition would be taken by telephone. The deposition was finally commenced on September 30, but counsel for Haworth warned Mrs. Jones at the outset that Haworth might sue her for testifying in violation of a settlement agreement she had executed. Mrs. Jones then indicated that she wanted to consult an attorney before testifying.[1] On October 1, 1991--still within the discovery period set by the district court--Wienke moved for a three day extension of time. Wienke's lawyer represented to the district court that Haworth had no objection to the extension; that Mrs. Jones had now had an opportunity to consult an attorney; and that she had been served with a subpoena for a deposition to be held, by agreement, on October 4. The district court denied the motion.
 
 
 29
 Wienke argues that Jones' health problems made deposition examination impossible, and that the district court erred in denying her motion for an extension. Against this background, and given Haworth's concurrence in the request for an extension of time, a record that stopped there may well have convinced us that the trial court committed a clear error of judgment in denying the extension. The record, however, does not stop there.
 
 
 30
 On November 13, 1991, the district court heard oral argument on the motion for summary judgment. In the course of the argument, counsel for Wienke reviewed the attempts to obtain the testimony of Linda Jones. Haworth's counsel reiterated that he had agreed to extend the discovery date beyond October 1. ("I wasn't trying to be unreasonable," he said. "I don't practice that way.") The district court subsequently made this statement on the record:
 
 
 31
 I'm willing to permit continuation of this so-called telephone deposition. I'm not a big fan of telephone depositions, but if it has been agreed upon, I'm willing to permit a continuation of that telephone deposition.
 
 
 32
 If Wienke's counsel believed that Mrs. Jones' testimony was of critical importance, he obviously should have insisted on completing the deposition forthwith. Why counsel for Wienke failed to seize the opportunity extended by the district court is not apparent, but the transcript of the hearing leaves no room for doubt that the opportunity to take Mrs. Jones' deposition was extended. Any prejudicial error thus having been cured, no abuse of discretion occurred with respect to Wienke's opportunity for deposing Mrs. Jones.
 
 C. Jury Trial
 
 33
 Wienke next argues that the district court abused its discretion in denying her jury demand. Wienke concedes that her demand for a jury was filed nineteen days late, but argues that the district court should have granted it because discovery had not yet commenced, and prejudice to Haworth would not have resulted.
 
 
 34
 Rule 38(b) of the Federal Rules of Civil Procedure provides that a party
 
 
 35
 may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefore in writing at any time after the commencement of the action and not later than ten days after the service of the last pleading directed to such issue.
 
 
 36
 Rule 39(b) provides that a court may order a jury trial "notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right...." We have held that "a district court has broad discretion in ruling on a Rule 39(b) motion." Misco, 784 F.2d at 205. We have also stated that "as a general rule, a district court will not abuse its discretion in denying a Rule 39(b) motion if the only justification is mere inadvertence." Id. (citations omitted).
 
 
 37
 Wienke's failure to make a timely jury demand appears to have been occasioned by inadvertence. Moreover, Wienke's counsel declined to file a written motion or to brief this issue even when invited to do so by the district court. The district court's denial of Wienke's three-week late jury demand was well within its discretion.
 
 D. Recusal
 
 38
 Wienke's final argument on appeal is a request, made for the first time on appeal, that this court order the recusal of District Judge Robert Holmes Bell. We normally do not address issues raised for the first time on appeal. See White v. Anchor Motor Freight, Inc., 899 F.2d 555, 559 (6th Cir.1990). We see no reason to depart from that rule in this case, but note nevertheless that Wienke's arguments for recusal lack merit. There is no evidence whatsoever that Judge Bell exhibited any personal bias toward Wienke's case. Wienke seems to impute bias based on Judge Bell's view that Wienke's proof was insufficient to escape summary judgment. In any event, this assignment of error is rendered moot by our affirmance of the grant of summary judgment.
 
 III.
 
 39
 Because we determine that the district court correctly decided each of the issues raised on appeal, we AFFIRM.
 
 
 
 [1]
 At oral argument on the motion for summary judgment, counsel for the defendant denied making an explicit threat of suit. He did tell Mrs. Jones, however, that by appearing for the deposition voluntarily she was violating her contractual undertaking not to cooperate in the prosecution of any employment claims against defendant Haworth. There is no contention that counsel for the plaintiff had been told of this contractual undertaking prior to September 30