OPINION
This appeal is taken by Plaintiff Appellant Peggy Snyder from the judgment entered by the Court of Common Pleas of Allen County granting Defendant Appellee City of Lima's motion for summary judgment.
In early 1990 David Berger (hereinafter "Berger"), Mayor of the City of Lima, lobbied the City Council to create a Human Resources Department for the City of Lima. The City Council agreed with Berger's proposal and passed an ordinance creating a Human Resources Department that included a Director of Human Resources and a secretary to serve at the director's disposal. The ordinance designated the newly created Director of Human Resources as an "unclassified" employee, one who is appointed by the Mayor and does not maintain a civil service classification. The salary designated by the City Council for the Director of Human Resources was $30,700.
In April 1990 after creation of the Human Resources Department Berger, hired Appellant, Peggy Snyder (hereinafter "Snyder"), to fill the newly created position, Director of Human Resources for the City of Lima. As Director of Human Resources, Snyder was required to perform organizational personnel functions; ensure that City Human Resource policies, procedures and practices complied with various collective bargaining agreements, Civil service rules, State and Federal Laws; develop prepare and maintain Human Resources records and documents; develop personnel policies and procedures; assist employees with questions and problems regarding Human Resources; prepare a Human Resources budget and serve as a member of various committees.
Prior to January of 1995, salaries and raises for the various directors of the City departments, including Human Resources, were scheduled and determined by the American Federation of State County and Municipal Employees ("AFSCME") system. Pursuant to ordinance passed in 1994, the City Council changed the method by which the Directors of the various City Departments received raises. The Council decided that beginning in 1995 the raises for the foregoing individuals were going to be approved by the City Council on the motion of the Mayor based on "merit" and not the AFSCME indexing standards used for "classified" and unionized employees as they had been in the past.
In late 1992, Berger lobbied the City Council to significantly increase Snyder's salary for the following year. After minimal discussion, the City Council voted to increase Snyder's salary by approximately ten thousand dollars ($10,000) to begin in January 1993. Following that raise, Snyder continued to receive raises equal to and in some cases above the raises received by the other Directors.[1] In December 1996, at a meeting of the City Council, pursuant to ordnance, Berger presented recommendations for salary increases for the Department Directors and his remaining Mayoral appointees. Following discussion the Council voted not to increase Snyder's salary. Berger informed Snyder that evening that the Council had voted not to increase her salary.
On January 15, 1997, Snyder filed charges with the Ohio Civil Rights Commission, alleging that "she had been unlawfully discriminated against due to [the City of Lima's] consideration of" her status as a woman. In support of her claim Snyder argued that "[a]ll other male City Department Heads who are similarly situated received their annual raise; and sufficient evidence exists to find a causal connection between sex and the alleged acts of [the City of Lima]". Snyder remained Director of Human Resources under the authority of the Mayor.
On June 23, 1997, Snyder filed additional charges with the Ohio Civil Rights Commission. Snyder claimed that the City of Lima had retaliated against her for filing the original charges with the Ohio Civil Rights Commission the previous January. Snyder cited two events in support of her theory of retaliation.
First, Snyder claimed that she had received literature from the Mayor regarding a Human Resources Seminar. Snyder informed the Mayor that she thought the seminar would be helpful and informative and expressed a desire to attend. The Mayor subsequently asked Snyder not to attend because there appeared to be a conflict of interest. Specifically, the law firm defending the City of Lima in Snyder's pending suit was presenting the seminar, and it did not feel it would be appropriate for Snyder, the adverse party, to attend. Snyder did not attend the seminar.
Next Snyder claimed that the City of Lima retaliated by not allowing her to attend a City Council meeting in executive session concerning claims of discrimination against City employees and the litigation surrounding the incidents.
In November 1997, Snyder filed another lawsuit against the City of Lima claiming that their executive sessions were being held in violation of Ohio's Sunshine Law. Snyder dismissed that lawsuit in February 1998 only to file a new complaint later that month based on a similar alleged violation of the Lima City Charter.
On January 26, 1998, an executive session of the City Council was scheduled concerning a sexual harassment claim filed against a police officer in the City of Lima. Berger realizing he would be out of town and unable to attend asked Snyder to attend the executive session. Further, Berger stated that he had informed his City Law Director that Snyder would be attending. Snyder assured Berger that she would indeed attend the executive session.
Later that evening, the City Law Director, left a voice message with Berger informing him that Snyder had not been in attendance at the City Council meeting that evening. Berger then attempted to contact Snyder to find out why she had failed to attend. Berger was unable to contact Snyder and left a message. Snyder returned his phone call and explained that she had failed to attend because she felt the meeting of the executive session was illegal and she did not partake in that kind of activity.
On February 12, 1998, Berger terminated Snyder's employment. Berger based his decision on Snyder's failure to attend the executive session of the City Council on January 26, 1998. In the termination letter Berger explained:
 "Without going into detail, I have determined that you permitted your personal interests in your litigation then pending with the City of Lima to seriously interfere with the performance of your responsibilities as the Director of Human Resources."
On June 9, 1999, Appellant Peggy Snyder filed a complaint in the Court of Common Pleas of Allen County alleging five separate counts, including that the City Council had discriminated against Snyder with respect to her salary because she was a female, the City Council had retaliated against her by not allowing her to attend an executive session and a seminar, and further the City of Lima had fired her in violation of public policy.
On March 29, 2000, Snyder filed a motion for partial summary judgment as to the public policy torts. On April 10, 2000, the City of Lima filed a motion for summary judgment as to the entire complaint. Both parties filed motions in opposition to the respective motions for summary judgment. On June 13, 2000, the trial court granted the City of Lima's motion for summary judgment and overruled Snyder's motion for partial summary judgment.
On appeal from that judgment Snyder presents five assignments of error.
 The trial court erred in granting summary judgment for Appellee on Appellant's claim for sex discrimination based upon the disparity in her wages in comparison to other department heads.
In her first assignment of error Snyder claims that the trial court erred by granting summary judgment in favor of the City of Lima because an issue of material fact exists concerning her claim of sex discrimination. Specifically, Snyder argues that there is a marked disparity in the compensation received by Snyder in comparison to the other "similarly situated" male Directors and further the City Council was motivated to perpetuate that disparity and deny her raises based solely on her status as a woman.
When reviewing summary judgment, we review the judgment independently without any deference to the previous determination made by the trial court. Conley-Slowinski v. Superior Spinning Stamping Co. (1988),128 Ohio App.3d 360. The standard of review in this court is de novo.AAAA Enterprises, Inc. v. River Place Community Urban RedevelopmentCorp. (1990), 50 Ohio St.3d 157, 553 N.E.2d 597.
Civil Rule 56 requires the court to determine from the materialsproperly to be considered and timely filed in the action, resolving alldoubts against the movant, that no genuine issue exists as to anymaterial fact, that reasonable minds could reach no other conclusion andthat the moving party is entitled to judgment as a matter of law.Therefore summary judgment is appropriate only when the following havebeen established: (1) that there is no genuine issue as to any materialfact; (2) the moving party is entitled to judgment as a matter of law;and (3) construing the evidence most favorable in the light of thenon-moving party, reasonable minds can come to but one conclusion andthat conclusion is adverse to the non-moving party. Civ.R.56(C); Bosticv. Connor (1988), 37 Ohio St.3d 144, 524 N.E.2d 881.
The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett
(1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265.
Once the moving party meets its burden, the non-moving party then has a reciprocal burden to set forth specific facts showing that there is a genuine issue of material fact for trial. A. Doe v. First PresbyterianChurch (USA) (1998), 126 Ohio App.3d 358, 364; Civ.R. 56(E). The nonmoving party may not rest on the mere allegations of her pleading.State ex rel. Burns v. Athens Cty. Clerk of Courts (1998)83 Ohio St.3d 523, 524 citing Mootispaw v. Eckstein(1996),76 Ohio St.3d 383, 385, 667 N.E.2d 1197, 1199; Civ.R. 56(E). Most importantly, the non-movant's failure of proof on an essential element of the case necessarily renders all other facts immaterial. Celotex Corp.v. Catrett (1986), 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265.
In analyzing a case of sexual discrimination pursuant to R.C. Chapter 4112 the trial court is required to determine (1) whether the employee presented a prima facie case of discrimination; (2) whether the employer showed a reasonable non-discriminatory rationale for the challenged action; and finally, (3) whether the employee proved that the stated rationale is a pretext for discrimination. Plumbers Steamfitters JointApprenticeship Commt. v. Ohio Civil Rights Comm. (1981), 66 Ohio St.2d 192,421 N.E.2d 128. Therefore, the initial burden of showing a prima facie case of discrimination is placed upon the employee. After having shown a prima facie case, then the burden shifts to the employer to show some nondiscriminatory rationale for such decision.
In order to show a prima facie case of discrimination based on the sex of an employee under R.C. Chapter 4112 or the Equal Pay Act, the employee must show that "different wages were paid to employees of opposite sexes for substantially equal work." Henry v. Lennox (6th Cir. 1985),768 F.2d 746 quoting Odomes v. Nucare (6th Cir. 1981), 653 F.2d 246,250. Snyder argues that the standard provided by the Equal Pay Act does not apply to cases like hers brought under R.C. Chapter 4112 however, as stated above, the Sixth Circuit has indeed held that it does.
After considerable review of the record, it is clearly evident that Snyder has not presented a prima facie case of discrimination. Specifically Snyder has failed to present evidence that as a Director of Human Services, she was doing work substantially equal to that of the other Directors. In fact, the record clearly reveals the contrary contention. To illustrate, Snyder, as Director of Human Services, held supervisory responsibility over one individual, her secretary. In contrast, most if not all of the other Director positions involved direct supervision of dozens of employees. In addition, the various Director positions obviously involved a distinct difference in substance and thus, required different licenses, backgrounds and educations. The substantive differences in the departments headed by the various directors included, public work, finance, administration of block grants, and public utilities. The job descriptions maintained by the City for each of the positions reflects the significant differences in each Director's job.
In addition, even had Snyder shown that she had performed "substantially equal work" as compared to the other male Directors as required by R.C. Chapter 4112 and the Equal Pay Act, she is unable to sustain the incredible burden of proof required to show that a legislative body, here the Lima City Council, acted in a discriminatory fashion. In Scott-Harris v. City of Fall River (1st Cir. 1997),134 F.3d 427 (reversed on other grounds) the First Circuit held that in showing a discriminatory motive on the part of the legislative body the plaintiff must show "(a) bad motive on the part of at least a significant bloc of legislators, and (b) circumstances suggesting the probably complicity of others". Id. at 438.
At her deposition, Snyder testified that she believed that three of the members of the council were motivated by gender in denying her raise. Specifically Snyder stated:
 * * * Specifically, Keith Cunningham. I would put John Nixon into that category. I know Bob Williams is a sexist, but I don't know whether he was influenced by them for that reason, I don't know.
Q: Anybody else?
A: Mary Decker.
In order to succeed in her claim Snyder must present evidence that a significant block of the Lima City Council were guilty of bad motive when they voted not to give her a raise or rather a significant block of the Lima City Council denied Snyder's raised based on her status as a woman. In addition, Snyder must produce evidence that the other remaining members acted in complicity with that decision.
The deposition testimony of Snyder is replete with accusations of sex discrimination and complicity on the part of the members of the Lima City Council. However, only three members of the City Council were deposed. Of those three members only one stated that the other members of the board might have influenced him. Three members do not comprise half of the Lima City Council much less a "significant block".
Further, even if this court were to presume that a prima facie case has been established, Snyder has still failed to offer evidence to prove that the reasons cited by the City Council members for not giving her a raise in salary were mere pretext. The City Council members presented several reasons in support of their decision to deny Snyder her raise including, suspected use of alcohol while at work, substantial reliance on outside consultants to perform work she was capable of doing, failure to reach settlement in recent negotiations with the firefighters, and finally the current salary level represented the maximum value of the Office of Human Resources Director to the City of Lima.
Therefore, because Snyder has failed to make a prima facie showing of discrimination that "necessarily renders all other facts immaterial". No error having been shown, Snyder's first assignment of error is overruled.
 The trial court erred in granting summary judgment for Appellee on Appellant's claim for retaliation based upon her opposition to sex discrimination and for filing a charge of discrimination against Appellee.
In her second assignment of error Snyder claims that the trial court erred by granting summary judgment in favor of the City of Lima because a genuine issue of material fact exists concerning her claim that the City of Lima retaliated against her by disallowing her attendance at a seminar and an executive session. As stated above, our standard of review is denovo.
In order to maintain a claim for retaliation Snyder must show "that she engaged in a protected activity, she was subsequently subjected by her employer to adverse employment action, and that a causal link existed between the two events." Yates v. Avco (6th Cir. 1987), 819 F.2d 630, 638
citing Cohen v. Fred Meyer Inc., (9th Cir. 1982), 686 F.2d 793, 796. Further, "the question of whether a change in an employee's job or working condition is materially adverse, rather than essentially neutral, is one of fact." Dahm v. Flynn (7th Cir. 1994), 60 F.3d 253,257, and as a result, can be resolved on a question of summary judgment if the question is "fairly not contestable". Williams v. Bristol-MyersSquibb Co. (7th Cir. 1996), 85 F.3d 270, 274.
On appeal Snyder claims that the City of Lima retaliated against her for filing a claim with the Ohio Civil Rights Commission by denying her ability to attend a seminar and an executive session both of which related to sex discrimination in the workplace and both presenting a conflict of interest. In granting summary judgment in favor of the City of Lima, the trial court held:
 "By Snyder's own admission the `legal seminar event' and `session dealing with sex discrimination claims involving other female employees' does not rise to any level of adverse employment action. These incidents did not involve a demotion, denial of any promotion, denial of any wage increase, nor any type of disciplinary proceedings. Snyder's claim for retaliation fails as a matter of law."
In regards to her claim of retaliation Snyder testified as follows:
 Q: And did either of these incidents have any bearing on your pay or salary?
A: No.
 Q: And neither of these incidents involved any type of discriminatory action against you?
A: No.
Q: Or a denial of transfer?
* * *
A: No.
Q: Or a denial of a promotion?
A: No.
Q: Or a transfer or demotion of any sort?
A. No.
The foregoing testimony reveals that Snyder did not receive adverse treatment or rather the City of Lima did not engage in adverse employment action after Snyder filed a complaint with the Ohio Civil Rights Commission. In her testimony Snyder admits that the City of Lima did not take any retaliatory action that resulted demotion, transfer, loss in wages or termination. To the contrary, Snyder's job and salary remained the same. Therefore, as a matter of law, Snyder has failed to present evidence of an essential element necessary for proof of retaliation. No error having been shown, Snyder's second assignment of error is overruled.
 The trial court erred in granting summary judgment for Appellee on Appellant's public policy tort claim for terminating Appellant's employment in violation of the public policy requiring public meetings to be open.
 The trial court erred in granting summary judgment for Appellee on Appellant's public policy tort claim for terminating Appellant in violation of the public policy giving employees the right to refuse to participate in the unlawful acts of their employers.
 The trial court erred in granting summary judgment for Appellee on Appellant's public policy tort claim for terminating Appellant in violation of the public policy prohibiting employers from retaliating against employees for seeking redress of wrongs.
In her final three assignments of error Snyder claims that the trial court erred by granting summary judgment in favor of the City of Lima with respect to the her claims that the City of Lima violated public policy when it terminated her for failure to attend an executive session of City Council because that executive session violated the law. Once again, our review is de novo.
In 1990, the Supreme Court of Ohio in Greeley v. Miami ValleyMaintenance Contractors, Inc. (1990), 49 Ohio St.3d 228, 551 N.E.2d 981
created an exception to the common-law-employment-at-will doctrine. This doctrine allowed an employer to terminate the employment of his worker "`at will for any cause, at any time whatsoever, even if done in gross or reckless disregard of [an employee's rights.'" Painter v. Graley (1994),70 Ohio St.3d 377, 382, quoting Phung v. Waste Mgt. Inc. (1986),23 Ohio St.3d 100, 102, 491 N.E.2d 114, 116, quoting Peterson v. ScottConstr. Co. (1982), 5 Ohio App.3d 203, 205, 451 N.E.2d 1236, 1239.
Under Greeley, a "discharged employee has a private cause of action sounding in tort for wrongful discharge where his or her discharge is in contravention of a `sufficiently clear public policy'." Greeley at 233, 511 N.E.2d at 986. Further, the Supreme Court has held that to "state a claim of wrongful discharge in violation of public policy, a plaintiff must allege facts demonstrating that the employer's act of discharging him convtravened a "clear public policy". Painter v. Graley (1994),70 Ohio St.3d 377 at paragraph two of the syllabus. In defining "clear public policy" the Supreme Court has decided that it "is not limited to public policy expressed by the General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law. Id. at paragraph three of the syllabus.
The record on appeal reveals that Snyder was dismissed for failure to attend a meeting of City Council. Berger had asked Snyder to attend since he would be unavailable and further informed Snyder that an executive session was to be held at that meeting to discuss several sexual discrimination cases and he wanted her to observe the discussions in his absence. Snyder failed to attend that meeting in contravention of her express promise to her supervisor, Berger. Snyder claimed that she failed to attend because she felt that the executive sessions were being held in contravention of the Ohio Sunshine Law and/or the Lima City Charter.
After her failure to attend the meeting Berger terminated Snyder.
Snyder now claims that the termination was in contravention of public policy. However, it is unclear what public policy Snyder is relying on. On appeal Snyder argues three possibilities for the "clear public policy" violated by the City of Lima. First, Snyder argues that the "clear public policy" is the rationale underlying the Sunshine Law that "all public meetings of any public body are declared to be public meetings open to the public at all times." R.C. 121.22(C). Next, Snyder argues that the "clear public policy" is that regarding the duty of employer's not to require their employees to perform illegal acts. Finally, Snyder claims that the "clear public policy" violated by the City of Lima when terminating Snyder is one that prohibits employers for terminating an employee who is seeking redress of wrongs through litigation.
Snyder's first argument that she was fired in contravention of the public policy that public meetings be open to the public is illogical. Snyder was not fired because she held a meeting open to the public or because she held a closed meeting not open to the public. Snyder was not fired because she filed a complaint in November 1997 that her employer held a meeting in violation of the Ohio Sunshine Law. To the contrary, on February 12, 1998, Snyder was fired for failure to follow the orders of Mayor Berger to observe an executive session of the Lima City Council concerning discrimination claims against a Lima City Police Officer. Snyder's argument fails to show that her discharge implicated a "sufficient clear public policy", here the Sunshine Law.
Snyder's second claim that her termination was in contravention of the public policy giving employees the right to refuse to participate in the unlawful acts of their employers is also without basis. First, Snyder claims that the executive session of the Lima City Council, her employer, was unlawful. However, Snyder is not employed by the Lima City Council, she is an at-will employee of the Mayor, Berger. Further, Snyder's participation or rather observation of an executive session could not be deemed unlawful, nor could Berger's because neither can be held liable for an act of City Council because neither is a member.
Finally, Snyder argues that the she was terminated in contravention of the public policy prohibiting employers from retaliating against their employees for seeking redress of wrongs through litigation. The record on appeal is quite to the contrary. Snyder does not present a shred of evidence that she was fired because of her pending litigation. It should be noted that at the time she was fired she had no litigation pending against the City of Lima. Further, the evidence presented establishes that Snyder was terminated by Berger for her failure to perform the tasks required by her job as Human Resources Director. Therefore, we are unable to find a genuine issue of material fact that merits trial.
In addition, it should be noted that Snyder's position, Human Resources Director, was an unclassified position created by the Lima City Council and its occupant appointed by the Mayor. In creating the position of Human Resources Director the Lima City Council clearly expressed a public policy that the Director serve at the pleasure of the Mayor who appoints him or her. Further, the Ohio Supreme Court has held that dismissal of an unclassified employee whose position was created by a legislative body, "precludes us from finding a `sufficiently clear public policy'" implicated upon the termination of an individual, here Peggy Snyder.Painter v. Graley (1994), 70 Ohio St.3d 377, 385.
No error having been shown Snyder's final three assignments of error are overruled and the Judgment of the Court of Common Pleas of Allen County is affirmed.
HADLEY, P.J., and SHAW, J., concur.
[1] Defendant's (City of Lima) Exhibit D illustrates the salary increases for all the Directors during the time that Snyder was employed as Director of Human Resources. In 1992, Snyder received a 7.56% salary increase. That increase was second only to Police Chief Catlett. In 1993, Snyder received a 20.96% salary increase, the largest given that year. In 1994, Snyder received a 6.50% salary increase, second only to the Police Chief, Catlett. In 1995, Snyder received a 3.05% raise, approximately the same and slightly greater than three others. In 1996, Snyder received a 2.84% raise, approximately the same as every individual working as an appointee for the Mayor that year. Finally in 1997 and 1998 Snyder received no raise.