Darryl GEE, Plaintiff–Appellant,

v.

LIEBERT CORPORATION,
Defendant–Appellee.

No. 01–3965.

United States Court of Appeals,
Sixth Circuit.

Feb. 12, 2003.

Before BATCHELDER, COLE, and GIBBONS, Circuit Judges.

## OPINION

COLE, Circuit Judge.

Plaintiff–Appellant Darryl Gee ("Gee") appeals the district court's grant of summary judgment in favor of Defendant–Appellee Liebert Corporation ("Liebert"). Gee is an African–American male who began permanent employment with Liebert in 1988. In 1996, Gee applied for a promotion, which was instead given to a white female. In 1998, Gee again applied for a promotion, and that position was given to a white male. Gee has raised federal claims pursuant to Title VII for race and pay discrimination, and state law claims asserting race discrimination.

Liebert filed a motion for summary judgment with the district court. The district court dismissed Gee's Title VII pay discrimination claims and the race discrimination claim stemming from the 1996 incident, finding that Gee had not exhausted his administrative remedies on these claims. With regard to the race discrimi-

nation claim arising out of the 1998 incident, the district court found that Gee had not shown a prima facie case because he was unable to demonstrate that he was qualified for the promotion at issue. Thus, the court granted Liebert's motion for summary judgment as to the Title VII race discrimination claim relating to the 1998 incident. Having dismissed the federal claims, the district court declined to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). As such, the state law claims were dismissed without prejudice.

For the reasons that follow, we AFFIRM the judgment of the district court.

## I. BACKGROUND

Darryl Gee became a full-time employee at Liebert, in January, 1998. Gee was assigned to a data entry position, where his supervisor was Kong Ng ("Ng"). In September of 1988, Gee was promoted to Domestic Sales Coordinator. In his performance review about a year later, in September of 1989, Gee received generally positive scores and remarks. The "Job Potential" section of the review also noted that Gee should be "promotable" in one to two years. In 1990, Jay Pitchford, an environmental administrator, told Gee of a job opening as a sales coordinator in the international division, and recommended to Gee that he apply. Gee applied for, was offered, and accepted the job. A supervisor conducted a performance review of Gee in September of 1990, ranking Gee's overall performance as highly satisfactory. The review noted that Gee quickly learned new products with which he was unfamiliar, put in lots of extra hours, handled himself well under pressure, and established good communication. It also stated in the review that "Darryl is anxious for more responsibility, and is promotable as

an opportunity may arise." In October of 1989, Gee's salary was increased from $22,000 to $22,880; in June of 1990 his salary was increased to $23,795; in January of 1991 it was increased to $24,509.

Gee received another positive performance review in September of 1991. This review stated that Gee's job performance had been highly commendable, and that Gee should be promoted to senior coordinator. As a result of the promotional increase when he was made senior coordinator and a separate merit increase, Gee achieved a salary of $27,273.

In 1992, Ng moved into the international division to again become Gee's supervisor. In October of 1992, Gee's salary was raised to $28,228, effective in January of 1993. From 1992 through 1994, Gee's reviews were always positive. Ng called Gee's performance outstanding, and, in 1993, stated that Gee was "ready to move on to a more challenging position." Through annual merit increases in salary, Gee was making a base salary of $31,118 by 1995.

In 1996, Gee applied for, but did not receive, the position of Environmental Domestic Team Manager. Instead, Kathy Vangas, a white female, was awarded the position. During the interview for the position, Jan Barnett, Manager of Internal Operations, told Gee that he was looking to fill the position with someone who was already in the Domestic Sales department.

In 1998, the position Power UPS Team Manager became available. Gee inquired about the position to Barnett, who told Gee to speak with Ng about it. In turn, Ng agreed to interview Gee for the position. In the interview, Ng told Gee that no specific experience was necessary for the position.

Gee was passed over for the position in favor of Rainy Murphy, a white male. Murphy had received performance evalua-

tions comparable to those of Gee, and had much less experience at Liebert than Gee did. Bothered by having been passed up for this promotion, Gee asked Ng and Barnett to explain why he had not been given the job. Gee alleges that Ng pointed to complaints he had received about Gee's timeliness in responding to the Singapore office. When Gee questioned this, Ng stated that he had received e-mails from them concerning the issue. Barnett recommended that Gee take some management courses at Liebert's training center. Neither Vangas nor Murphy had ever taken such training courses.

Gee then filed this action. Gee's complaint, filed December 14, 1999, contained three counts: one for Title VII race discrimination under 42 U.S.C. § 2000e, one for Title VII pay discrimination under 42 U.S.C. § 2000e, and one for state law race and pay discrimination under Ohio Revised Code Annotated §§ 4112.02 and 4112.99.

On January 16, 2001, Liebert filed a motion for summary judgment. Gee filed his opposing memorandum on February 8, 2001, and attached to this filing supplemental discovery that included three affidavits. These affidavits were statements by three African-Americans, Debra Whitlow, Clifton Askew, and Alfreda Seats, each of whom had worked or were working at Liebert and claimed to have faced racial discrimination. Liebert filed a motion to strike all three affidavits, claiming that Gee failed to comply with Fed.R.Civ.P. 26(e)(2), which imposes on parties a "duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect." Fed. R.Civ.P. 26(e)(2).

The district court granted Liebert's motion for summary judgment without having ruled on the admissibility of the affidavits,

and thereafter denied Liebert's motion to strike as moot. The district court dismissed Gee's 1996 race discrimination claim and both pay discrimination claims, finding that Gee had not exhausted his administrative remedies with regard to those claims and thus, that the district court was without subject matter jurisdiction. The court granted Liebert's motion for summary judgment on the race discrimination claim stemming from the failure to promote Gee in 1998, finding that Gee was unable to make his prima facie case because he could not show that he was qualified for the position, and finding that the record did not contain any evidence that the decision not to promote Gee was motivated by racial discrimination.

## II. ANALYSIS

Exhaustion of Administrative Remedies for the Pay Discrimination Claims and the 1996 Race Discrimination Claim

The district court found that the plaintiff never brought a charge before the EEOC alleging pay discrimination, and did not bring a charge before the EEOC for the race discrimination claim resulting from the 1996 failure to promote. As such, the district court held that it lacked subject matter jurisdiction with regard to these claims. Indeed, Gee's charge of discrimination filed with the Ohio Civil Rights Commission and the EEOC does not mention his salary, and explicitly states that the date the discrimination occurred was September 15, 1998. Although he was required to state the particulars of the discrimination, Gee only made reference to Liebert's failure to promote him in 1998. He made no mention of the 1996 incident where Vangas was promoted instead of Gee.

Gee argues that the district court erred in holding that he failed to exhaust his

administrative remedies. First, he argues that the pay discrimination claims and his 1996 race discrimination claim are actionable because they are "reasonably expected to grow out of the charge of discrimination." *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir.1991). Additionally, Gee contends that his otherwise time-barred 1996 claim is salvaged by the continuing violation doctrine, which recognizes that a continuous series of discriminatory acts may be challenged if one of those acts occurred within the limitations period. *See Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 408 (6th Cir.1999), *cert. denied*, 528 U.S. 1154, 120 S.Ct. 1158, 145 L.Ed.2d 1070 (2000).

█ This Court has held that review of a district court's factual findings in a dismissal for lack of subject matter jurisdiction is for clear error only. *Ang*, 932 F.2d at 545. Gee's pay discrimination claim is not reasonably expected to grow out of the race discrimination charge. Gee fundamentally mischaracterizes the nature of a pay discrimination claim. Title VII prohibits employers from taking adverse employment actions against individuals based on their race. 42 U.S.C. § 2000e. Gee would have a claim under Title VII if Liebert paid him less because he is black than they would pay him for the same job were he white. Gee's claims simply do not fall into this category.

In order to establish a prima facie case of pay discrimination under Title VII, the plaintiff must show that the employer paid lower wages to employees of the protected class than those outside the class, for equal work. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *Odomes v. Nucare*, 653 F.2d 246, 250 (6th Cir.1981). While Gee is unquestionably correct that one of the harms which individuals suffer when they are refused promotions based on their race

is a lower salary than they would otherwise receive, this is accounted for fully in his failure-to-promote claim. Plaintiffs do not have separate, component claims for all of the individual ways in which they suffer from being denied a promotion. Thus, his pay discrimination claims are not reasonably expected to grow out of his discrimination claims.

█ Additionally, Gee is similarly unable to sustain the otherwise time-barred claims through the invocation of the continuing violation doctrine. The continuing violation doctrine does not permit a plaintiff to bring otherwise time-barred actions for a failure to promote. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2073, 153 L.Ed.2d 106 (June 10, 2002). In *Morgan*, the Supreme Court stated that "[d]iscrete acts such as ... failure to promote ... are easy to identify. Each incident of discrimination ... constitutes a separate actionable 'unlawful employment practice.' [Plaintiffs] can only file a charge to cover discrete acts that 'occurred' within the appropriate time period." *Id.* Thus, the argument that the claims from the 1996 failure to promote are actionable under the continuing violation doctrine necessarily fails, as it is uncontested that Gee did not file a timely EEOC complaint with regard to that incident.

For these reasons, the district court was correct in dismissing the pay discrimination claims and the race discrimination claim that stems from the 1996 incident.

### Gee's Qualifications for the 1998 Position

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(A)(1). For Title VII purposes,

the failure to promote is considered an adverse employment action. *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 410 (6th Cir.1999).

To establish a prima facie case in this context, the plaintiff must prove: (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who are not members of the protected class received promotions. *Allen*, 165 F.3d at 410; *see also Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir.1996). If the plaintiff meets this burden, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory rationale for the adverse employment action. Upon so doing, the burden shifts back to the plaintiff to demonstrate that the proffered rationale is a pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

This Court reviews de novo a district court's grant of summary judgment. *See Allen* 165 F.3d at 409 (6th Cir.1999). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). When reviewing a motion for summary judgment, the evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ We find that the district court did err in holding that there was no genuine issue of material fact with regard to whether Gee was qualified for the position to which Murphy was promoted. Liebert does not contest that Gee is a member of a protected class, that he was considered for and denied the promotion, or that this constitutes an adverse employment action. Thus, the issue of whether Gee provides enough evidence to raise a genuine issue of material fact regarding the prima facie case hinges on an assessment of his qualifications.

In support of the decision that Gee was not qualified for the position, the district court points to a number of factors. For instance, the court points out that Ng testified that, while Gee was a valuable employee, he did not have the supervisory experience and leadership skills necessary to succeed in the job. However, the court does not mention that Gee testified that Ng told him that there was no specific experience necessary, that Gee testified that this position was "the next step up" from where he was, and that Ng had, five full years earlier, stated in his performance review that Gee was "ready to move on to a more challenging position." Hence, there is evidence in the record that this position was the next logical step for Gee, and that his supervisor considered him prepared to move on to a more challenging position. When viewed in the light most favorable to the appellant, this creates a genuine issue of fact about whether Gee was qualified for the position.

The court stated that Gee's attempts to contradict Ng's testimony were ineffective, stating that a plaintiff is unable to "create a material issue of fact simply by disagreeing with defendant." Here, Gee is not attempting to create a genuine issue by merely disagreeing with Liebert's judgment. Gee has actual evidence, in the form of deposition testimony and documented performance reviews, that create a genuine issue of fact with regard to his

qualifications. For employees to demonstrate that they are qualified for a position, they must show that they meet their employer's legitimate expectations and perform to their employer's satisfaction. *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 729 (6th Cir.1999). Gee has presented substantial evidence that Liebert was satisfied with the quality of his work. *See Cicero v. Borg–Warner Auto. Inc.*, 280 F.3d 579, 586 (6th Cir.2002) (finding that a plaintiff's performance with an employer, as evidenced by positive evaluations and merit pay increases, can demonstrate that the plaintiff met the employer's legitimate expectations).

■ Moreover, the district court erred by conflating steps of the *McDonnell Douglas* analysis. In determining that Gee was not qualified, the district court considered evidence such as the testimony that Liebert had received complaints about Gee failing to respond promptly to sales representatives. However, this is an argument that is used by Liebert as a component of its legitimate, nondiscriminatory rationale for failing to promote Gee. The district court also points specifically to Ng's testimony that he had concerns about Gee being tardy with these responses. Ng testified at his deposition that the complaints he received concerning Gee were "verbal, by phone." However, Gee testified that Ng told him that he received e-mail complaints about Gee's responsiveness. When Gee expressed surprise to hear of such complaints and asked to see the documentation, Ng was unable to present Gee with a copy of any such e-mails. Also, the district court ignored the fact that Ng had stated that, due to Gee's workload, Gee was too busy to possibly provide professional services to all customers.

When assessing whether a plaintiff is qualified at the prima facie stage, courts must examine the plaintiff's evidence independent of the nondiscriminatory rationale produced by the defense. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660–61 (6th Cir.2000). "While a plaintiff may very well lose on summary judgment because [the plaintiff] fails to proffer evidence on that 'ultimate issue,' a court misapplies the structure of *McDonnell Douglas* by holding that [the plaintiff] fails at the prima facie stage due to defendant's nondiscriminatory reason." *Id.* at 661; *see also Cicero*, 280 F.3d at 585 (stating that the district court erred in failing to judge the plaintiff's qualifications independent of the reason that the employer offered for the adverse employment action). Concerns about the job performance of a plaintiff are more appropriately raised as part of the second and third steps of a *McDonnell Douglas* analysis. *Cicero*, 280 F.3d at 588–89.

In short, the judgment of the district court that Gee was not qualified for the position violates our holding in *Cline.* From the evidence in the record, it is not clear that Gee was the best individual for the job, nor that he was more qualified than Murphy. However, given Gee's lengthy and stellar work history at Liebert and his breadth of experience, there is sufficient evidence that he was qualified for the position to create a genuine issue of fact. Thus, the district court erred in finding that Gee could not satisfy the "qualified-for-the-promotion" element of the second prong of the prima facie case.

We also believe that Gee satisfied his burden under the fourth prong of the prima facie case. As noted by Ng in his deposition, Gee possessed qualifications similar to Murphy's. While this evidence may be challenged by Liebert in the next phase of the *McDonnell Douglas* analysis, it is sufficient here, at the first stage, to demonstrate that Gee was similarly quali-

fied to Murphy, the successful candidate outside his protected class.

### Pretext

Once an employment discrimination plaintiff establishes the necessary prima facie case, the burden shifts to the defendant to produce evidence that the plaintiff was rejected, for a legitimate, nondiscriminatory reason. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). This burden is one of production, not of persuasion, and can involve no credibility assessment. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the defendant employer meets this burden of production, the plaintiff must be given the opportunity to prove, by a preponderance of the evidence, that the legitimate nondiscriminatory reasons offered were a pretext for discrimination. *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097.

It does not necessarily follow from finding Gee qualified that he therefore should have been given the job. It is a commonplace scenario for employers to consider a number of qualified candidates for just one position. The reasons why he was indeed qualified, however, an aspect of the first stage of the *McDonnell Douglas* analysis, are distinct from the reasons provided for why Murphy was given the job over Gee, which apply to the second stage of the analysis.

■ Liebert provided a number of reasons why Murphy was chosen over Gee. For instance, Ng testified that Murphy was the overall most qualified person, he had a very strong recommendation for the job, he was very well prepared for the interview, and he had the best educational background. Indeed, Gee does not have a bachelor's degree, and Murphy does. Gee presents no evidence to indicate that any of these rationales are pretexts for discrimination.

While Gee has at least raised a genuine issue regarding his qualifications, there is still a substantial gap between proving that he was among a number of qualified candidates for the job and proving that the reason he did not get the job was race discrimination. Gee contends that if this Court finds that he was qualified for the position, the same arguments are applicable to rebut any argument made by Liebert that there was a legitimate, nondiscriminatory reason for failing to promote Gee. But Liebert has articulated a number of legitimate reasons, beyond Gee's lack of qualification, for hiring Murphy for the job. In this instance, Gee needs to present additional evidence to demonstrate that Liebert's failure to promote him was caused by racial discrimination.

Gee has adduced no evidence to demonstrate that the proffered rationale for awarding the job to Murphy was pretextual. As he has not demonstrated a genuine issue of material fact regarding his ability to meet this burden, the district court's grant of summary judgment was appropriate.

### The Affidavits

■ Gee also claims error in the failure of the district court to admit and consider the affidavits of other African–American Liebert employees. We need not determine whether the district court erred in failing to consider the affidavits. The admission and consideration of the Askew and Seats affidavits are irrelevant to the issues in this case because neither affidavit contains any indication that either of the affiants was supervised by Ng or Barnett. Under the circumstances of this case, we think that being under separate supervisors is sufficient to render a witness's testimony irrelevant.

■ The Whitlow affidavit is also irrelevant to the issues in this case. The parts of Whitlow's affidavit that are not hearsay simply establish that Whitlow applied for two promotions, which were instead awarded to two unidentified white people, and that two other white employees received promotions after only six months or less in their previous positions. Whitlow did not testify regarding any events connected to Liebert's failure to promote Gee. Whitlow's affidavit alone is not sufficient to establish a prima facie case that Whitlow was a victim of illegal discrimination and certainly is not evidence that illegal discrimination motivated the decision not to promote Gee.

■ Liebert also argues that Gee should have filed a Rule 56(f) affidavit if he needed more time for the discovery necessary to oppose the motion for summary judgment. Fed.R.Civ.P. 56(f), in pertinent part, states: "Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court ... may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had." In response, Gee contends that Rule 56(f) is not applicable, because he already had sufficient evidence to defend the motion, even without the affidavits. The preceding analysis, the district court opinion, and the actions of Gee's counsel all indicate that this is not the case, and that the affidavits were intended to help defend the summary judgment motion. Thus, Rule 56(f) does apply.

For these reasons, the district court's dismissal of the motion to strike the affidavits as moot after it granted the motion for summary judgment, and the corresponding implicit decision not to consider the affida-vits, have no bearing on this case, and are not cause for reversal.

### Exercise of Supplemental Jurisdiction over State Law Claims

■ Both parties agree that the district court should have exercised its discretion to rule on the state law claims pursuant to 28 U.S.C. § 1367(c)(3). This Court uses an abuse of discretion standard to review a district court's decision regarding the exercise of supplemental jurisdiction. *Hankins v. The Gap, Inc.,* 84 F.3d 797, 802 (6th Cir.1996); *Taylor v. First of Am. Bank— Wayne,* 973 F.2d 1284, 1288 (6th Cir.1992). "Pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Baer v. R & F Coal Co.,* 782 F.2d 600, 603 (6th Cir.1986) (per curiam). "[I]n the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie– Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). As such, we find that the district court did not abuse its discretion in failing to exercise its supplemental jurisdiction over the remaining state law claims.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.